# Staunton

JEAN MCNEIL PEPPER, EXECUTRIX, ETC. v. DIXIE SPLINT
COAL COMPANY, ET AL.

September 19, 1935.

Present, Campbell, C. J., and Holt, Gregory, Browning,
Chinn and Eggleston, JJ.

The opinion states the case.

*A. K. Morison, H. E. Widener* and *Warren & Cantwell,* for the appellant.

*Greever & Gillespie* and *John W. Flannagan,* for the appellee.

GREGORY, J., delivered the opinion of the court.

A motion was made to hear this appeal *ex parte* upon the brief of the appellee because the appellant failed to state in the petition for the appeal that she desired to adopt the petition as her opening brief. Some sixty days before the appeal was heard by this court counsel for the appellant notified counsel for appellee in writing that the petition would be adopted as the opening brief. No injury, prejudice or surprise to the appellee has resulted from the failure to state in the petition that it would be adopted as the opening brief. We therefore overrule the motion.

Motion was made to dismiss the appeal. We have examined the matters set out in the motion and fully considered the contentions of the appellee and the grounds of the motion. There is no merit in this motion and we accordingly overrule the same.

This suit was originally instituted for an accounting of the sums of money due to the complainant from the defendants for royalties and rents due under a lease of coal lands and for the construction of certain portions of the lease.

The defendants answered the original bill and filed cross-bills. The complainant also filed an amended and supplemental bill charging the defendants with fraud by the substitution of new lessees without the consent of the lessors, which consent was required by the lease.

On October 21, 1919, A. P. Pepper and his brother, whose interest A. P. Pepper acquired in 1927, leased to the Dixie Splint Coal Company, a corporation, the jaw-bone seam of coal on a tract of 188 acres of land situated in Russell county, Virginia. The lease was to expire on June 1, 1922, and provision was made for it to be renewed or extended concurrently with a certain lease which the lessee had previously made with the Clinchfield Coal Corporation, the intention being that the two leases should expire at the same time.

The lessee entered upon the premises and began to mine and ship coal therefrom under the lease, at the same time continuing its mining operation under the Clinchfield Coal Company's lease. Reports were made to A. P. Pepper at Bristol each month of the quantity of coal mined under both leases. These reports continued until January 21, 1928, when they ceased. They as well as the correspondence were made in the name of Dixie Splint Coal Company. The lease was signed in the name of Dixie Splint Coal Company by Scott Litton.

It is not necessary to copy the lease. A number of the provisions are not involved. It is the usual lease touching mining transactions. The lessee agreed to mine and remove all of the merchantable coal from the premises in accordance with the mining regulations of the State and the United States "to the end that there shall be recovered from said stratum the greatest possible tonnage of coal; and the quantity of coal to be recovered from said boundary, as now agreed upon between the parties hereto, shall be not less than eighty-five (85%) per cent of the entire body of said coal stratum in said boundary."

The lessee agreed to pay the lessors as royalty for each long ton produced fifteen cents and after January 1, 1920, a minimum royalty of $3,000.00 per annum payable monthly at $250.00 per month.

The lessee agreed to furnish the lessors every six months a map showing the "workings" in said premises and copies of the mine maps which the State requires. It also agreed to furnish the lessors each month with a statement of the wagon loads and tonnage produced from the mine and to keep accessible to the lessors, mine production records and to permit the engineers of the lessors to inspect the mine workings at any time. It agreed to pay all taxes upon the lease or any equipment or other property placed on the premises.

It was covenanted and agreed that the lessee would not sub-let or assign the lease except by the consent of the lessors expressed in writing and even then such consent

was not to release the lessee from the full performance and discharge of all of the covenants in the lease unless the lessors expressly released the lessee therefrom by a proper writing.

It was provided that after full compliance with the covenants in the lease, "including the mining to exhaustion as hereby contemplated of said stratum of coal, and upon the discharge of all royalty, rent damages and compensation required * * *" the lessee was to be permitted to remove its property from the premises within six months.

Section twelve of the lease, about which a part of the controversy arises, is, as follows:

"It is further agreed and understood between the parties hereto that in the event that the lessee is prevented from producing the minimum tonnage provided under this lease, on account of strikes, lockout, floods, fires, Acts of God or other agencies beyond the control of said lessee, then the minimum royalty shall be abated in proportion to the time lost on account of such agencies; and in case of failure to agree upon the extent of this abatement this shall be subject to arbitration as provided in paragraph nine of this lease."

The original bill was filed in this cause on July 1, 1931, and Dixie Splint Coal Company and Scott Litton were made parties defendant. The purpose of the suit as previously stated was to require an accounting of any and all sums due A. P. Pepper the sole lessor by reason of royalties and to render judgment therefor. Royalty payments had ceased in 1928.

The defendants filed pleas in abatement to the bill, the complainant filed a replication, the cause was heard upon testimony adduced and the pleas in abatement were overruled.

On November 11, 1931, the defendants filed their joint answer and cross-bill. They set forth that Dixie Splint Coal Company was dissolved on July 1, 1920; that a partnership composed of Scott Litton and wife and Lee Long and family was organized July 1, 1920; that it did business

under the name of Dixie Splint Coal Company and continued with such until January 1, 1924, when it was dissolved; that on the same day a new corporation was organized bearing the same name, and that the defendants were not indebted to the complainant in any sum.

They also asserted that under paragraph twelve of the lease, which has heretofore been copied in this opinion, they were not obligated to pay any annual minimum rent unless market conditions were such that sufficient tonnage to produce said annual rent could be mined and sold for a profit; and that for the years 1921-1924-1925-1927 and 1928 the market conditions were such that sufficient tonnage for the purpose could not be profitably mined.

They also asserted that the complainant had been guilty of laches in asserting his demands and that they were barred by the three year statute of limitation.

The cross-bill made Litton and his wife and Lee Long and the members of his family, all of whom were co-partners, and the then complainant, A. P. Pepper and his brother, George H. Pepper (against whom no relief was sought), parties defendant.

Later all of the defendants except A. P. Pepper answered the cross-bill and admitted the allegations therein contained.

On February 8, 1932, A. P. Pepper filed his answer to the cross-bill and asserted that he did not know until the cross-bill was filed that there had been any change whatever in the first Dixie Splint Coal Company; that he had no notice of the transfer of the lease from the first Dixie Splint Coal Company to the co-partnership, nor any notice of the transfer of the lease from the co-partnership to the third or present Dixie Splint Coal Company, and that paragraph twelve of said lease was plain and unambiguous and expressed the true intent of the parties.

The complainant denied that the lease terminated on June 1, 1922, but asserted that Dixie Splint Coal Company had been in exclusive possession of the premises and exercising all of the rights and privileges granted by said lease

from 1919 until the mining operations were abandoned in 1928, and he denied that the statute of limitations or laches barred his claims.

The complainant in his amended and supplemental bill again alleged that he had no knowledge of the transfer of the lease from the first Dixie Splint Coal Company to the co-partnership or its subsequent transfer by the co-partnership to the third Dixie Splint Coal Company, that the three companies worked and traded under the same name for the purpose of defrauding the complainant; that each of the companies and the partners are liable for the complete performance of the said lease and for the debts of all the companies; that Scott Litton was in complete control and active management of each of the companies, owning one-half interest in each; that at the time of the abandonment of the lease one million tons of recoverable coal remained on the premises for which each of the companies and the partners are due to pay the complainant under the lease fifteen cents per ton and that it is necessary for an accounting showing the primary and secondary liabilities of each of the companies and the sums of money paid as dividends and the distributions made to the co-partners and stockholders of the companies.

The three companies are made parties to the amended and supplemental bill as well as the individuals who composed the partnership.

Later it was suggested that the complainant, A. P. Pepper, had departed this life and upon motion of his wife, Jean McNeil Pepper, the court directed that the cause be proceeded with in her name as executrix and sole devisee of A. P. Pepper, deceased.

The cause was heard upon the pleadings and depositions of witnesses and the court rendered an opinion and entered a final decree in which it was held that the relief prayed for in the cross-bill should be denied; that there was no liability against any of the parties named in the original and amended bill except the third Dixie Splint Coal Company and that the complainant should recover

against the third Dixie Splint Coal Company, which was a corporation, the sum of $9,000.00 with interest.

The complainant has accepted the judgment against the third Dixie Splint Coal Company for $9,000.00 but appeals from that portion of the final decree which denies the relief sought by the amended and supplemental bill against the first Dixie Splint Coal Company and the co-partnership and the individuals composing the same on the ground that a fraud had been perpetrated. This is made the basis of the main assignment of error.

The question here for determination is whether or not under the evidence and pleadings the first Dixie Splint corporation, the Dixie Splint co-partnership and the individual partners are liable to the complainant for the performance of the covenants contained in the lease. The third Dixie Splint Coal Company is not involved in this appeal.

We have already seen that the evidence shows that the first Dixie Splint Coal Company, a corporation, was organized prior to 1919 and was engaged in mining coal in the jaw-bone seam on the property of the Clinchfield Coal Company. Its stock was owned by Scott Litton and his wife and Lee Long and his family, the Littons having fifty per cent and the Longs having fifty per cent. This corporation, after entering into the lease with the Peppers which was to expire in 1922 (unless extended or renewed as therein provided for), and after operating under the lease a short time transferred all of its assets including the lease to a co-partnership which was owned by the same parties, namely Litton and wife and Long and his family, and the corporation was dissolved in 1920. The co-partnership continued to operate the same mine, under the same name and under the same lease as was done by the corporation though it did not expressly assume the liabilities of the corporation. It paid the corporation, as a distinct entity, nothing for its assets. After the co-partnership had operated the mine for some four years, or until 1924, it transferred all of its assets including the lease to a

new corporation which had just been organized (its stock being owned by the same parties), and this latter corporation continued to operate the same mine under the same name and under the same lease just as its two predecessors had done. The partnership as a distinct entity received nothing for its assets. This last corporation did not expressly assume the liabilities of the co-partnership.

The third or last company ceased to operate the mines in 1928, and recently, after this suit was brought, it filed a voluntary petition in bankruptcy and was duly adjudicated a bankrupt.

All three of these companies made their payments for coal mined to A. P. Pepper at Bristol, Virginia. The statements made and the correspondence show that the three companies operated the mine from the beginning to the end under the name of Dixie Splint Coal Company. Scott Litton was actively in charge of the mining operations throughout the whole time that the three companies operated. The same mine was operated, under the same lease and by the same parties. The same parties owned the entire business of the three companies.

Under these circumstances, and putting aside the motive for this arrangement, it is perfectly obvious that the first corporation, the co-partnership, and the second corporation are one and the same in so far as the appellant here is concerned. The actual and ultimate control and ownership of the property and business of the three companies was lodged in Litton and Long. Such complete dominance and control by them made the two corporations and the co-partnership, *quoad* the appellant, merely a veil or shadow through which the court will look to the substance of things whenever it would be unconscionable, through corporate fiction or otherwise, to permit the real and responsible parties to escape liability by turning over their property from one entity to another. The form changed but the real parties in interest always remained the same.

It is true that the co-partnership did not expressly

assume the lease when it was transferred to it, but it operated under it in the same name for some four years just as though it were the lessee. It made the required reports to A. P. Pepper who lived in Bristol and sent him the royalties. In their cross-bill they ask that the lease be reformed. They thereby recognize the lease, and they are estopped to deny that they are tenants under the lease. We think the partnership and the individual members thereof are as much responsible for the performance of the covenants in the lease as if they were the original lessees.

Justice Holt, in the case of *People's National Bank* v. *Morris,* 152 Va. 814, 148 S. E. 828, 829, in speaking of the liability of one corporation which succeeds to the assets of another, quoted as follows:

" 'In order to render the purchasing company personally liable for the debts of the selling corporation, it must appear that (a) there be an agreement to assume such debt; (b) the circumstances surrounding the transaction must warrant a finding that there was a consolidation of the two corporations; or (c) that the purchasing corporation was a mere continuation of the selling corporation; or (d) that the transaction was fradulent in fact.' *Luedecke* v. *Des Moines Cabinet Co.,* 140 Iowa 223, 118 N. W. 456, 32 L. R. A. (N. S.) 616; 7 R. C. L. page 183; Cook on Corporations (6th Ed.), section 673."

While it is perfectly true that the co-partnership did not expressly assume the debts of the first Dixie Splint Coal Company it is quite apparent that the co-partnership was a mere continuation of the first corporation and to permit the first corporation and the co-partnership to escape liability for the performance of the covenants in the lease would be a fraud.

In so far as the first Dixie Splint Coal Company is concerned the fact that it was dissolved after transferring its assets to the co-partnership did not relieve it of its obligations and debts, for under section 3810 of the Code it is provided that the dissolution of a corporation shall

not affect the rights of existing creditors at the time of such dissolution. The appellant at the time of the dissolution was an existing creditor of the first Dixie Splint Coal Company for it was bound for a term of some two years under the lease at the time of its dissolution; it had covenanted to mine and remove all of the merchantable coal on the premises and had agreed that such coal was eighty-five per cent of the entire body of the coal on the premises; it agreed to pay fifteen cents per ton for the coal mined and it agreed that it would not assign or sublet the premises without the written consent of the lessor.

Also under section 3840 of the Code it is provided that where dividends are declared out of the capital stock of a corporation, the directors in their individual capacity shall be jointly and severally liable to the corporation's creditors to the amount of the capital so divided, and that each stockholder who participates in such dividend shall be liable to the creditors to the extent of the amount received by them.

The evidence in this case shows that the Littons and Longs received certain dividends from the first Dixie Splint Coal Company and also from the co-partnership and the third company, the amount of which they refused to disclose. A reasonable inference from the testimony would be that they received substantial sums.

In the case of *American Railway Express Company* v. *Downing*, 132 Va. 139, 111 S. E. 265, 268, in speaking of the effect of a company purchasing the entire assets of another company where the selling company owes debts, this is said:

"The consolidated company has in its hands property which, in equity and good conscience belongs to the plaintiff to the extent of having his claim satisfied thereby; and, wherever property, or money, is so held, 'the law operating on the acting parties creates the duty, establishes the privity *and* implies the promise and obligation, on which the action is founded.' *Brewer* v. *Dyer*, 7 Cush. (Mass.) (337) 339. See, to same effect, *Moses* v. *MacFerlan*, 2 Burr.

1012; Clark on Contracts, section 314, page 757; *Norfolk* v. *Norfolk County,* 120 Va. 356, 91 S. E. 820; 2 R. C. L. section 9, pages 749-750.

"Where the circumstances are such that the law implies the promise on the part of the consolidated corporation to pay the liabilities of the constituent companies, the situation is precisely the same in principle, as if such promise were an express promise; and the plaintiff for whose benefit such promise exists may recover upon it by action at law against the promisor, upon either of the principles aforesaid. *Langhorne* v. *Richmond R. Co.,* 91 Va. 369, 22 S. E. 159, and *Cosmopolitan Life Ins. Co.* v. *Koegel,* 104 Va. 619, 629, 631, 52 S. E. 166."

In 15 A. L. R. at page 1112 there is found a lengthy note in which all of the cases are collected and referred to touching the liability of one corporation for the debts of its predecessor where the assets of the latter have been transferred to the purchasing corporation without any agreement on the part of the purchasing corporation to assume the payment of those debts. This note has been supplemented in 30 A. L. R. at page 558 and 39 A. L. R. at page 143.

The foregoing authorities are cases in which corporations are involved; that is, where one corporation has succeeded to the assets of another, while here we have a case where a co-partnership has succeeded to the assets of a corporation and the stockholders and managing head of the corporation are the sole partners and in control of the entire affairs of the co-partnership. The partners here, Litton and Long, are bound to have known of the obligations of the corporation because they as officers and directors of the corporation made them, including the lease here involved. Therefore the principle in the authorities cited is peculiarly applicable here.

■ Our conclusion is that the first Dixie Splint Coal Company is still liable for the performance of the covenants in the lease because under section 3810 of the Code, the rights of the lessors were unaffected by the dissolution

of the corporation. The directors and stockholders of the first Dixie Splint Coal Company are liable for whatever dividends that were declared out of the capital stock and received by them from the corporation upon its dissolution under Code, section 3840. The partners forming the co-partnership and the co-partnership itself are also liable for the performance of the covenants of the lease, they having received the assets from the corporation knowing of its liability under the terms of the lease. The first Dixie Splint Coal Company, its directors and stockholders, the co-partnership, and the partners will be treated as the lessees under the lease and will be held accountable for the performance of the covenants in the lease or for damages for their breach.

The defense of laches is not applicable here. No conduct on the part of the appellant or her predecessors has been shown which caused any injury to the defendants. So far as A. P. Pepper is concerned, the record clearly shows by the undisputed testimony that he had no knowledge of the dissolution of the first company nor of the creation and dissolution of the second and the creation of the third company. But it is claimed that the brother George H. Pepper who was a former co-lessor of the leased premises knew of the dissolution of the first company and the formation of the partnership. The evidence, however, is not satisfactory on this point nor sufficient to sustain the defense of laches.

The defense of the three-year statute of limitation was interposed and sustained by the lower court, but with this holding we cannot agree because the lease was a sealed instrument and if any statute of limitation applied it would be the ten-year statute. Aside from this, however, it is clearly shown that the amended and supplemental bill was brought within a reasonable time after the facts regarding the successive transfers of the lease became known to the lessor and the statute would only begin to run from the time of the discovery of the facts or from the time they should have been discovered. *Crau-*

*furd's Adm'r* v. *Smith's Ex'r*, 93 Va. 623, 23 S. E. 235, 25 S. E. 657; *Grove* v. *Lemley,* 114 Va. 202, 76 S. E. 305.

The defendants claim that they have exhausted the merchantable coal on the premises but the trial court held adversely to this claim saying that "the preponderance of the evidence is to the contrary and creditable witnesses place the amount still there as exceeding five hundred thousand tons." We are in accord with this finding of the trial court.

The defendants contend that clause twelve of the lease, which has been previously copied herein, permitted them to abandon the mine if the coal could not be profitably mined on account of bad market conditions, and that if the said clause did not allow them to do this, then they asked that it be reformed so as to permit it because such was the intention of the parties when the clause was placed in the lease. The lower court held adversely to this contention and we think the holding was correct. The court said: "The contract in this regard is clear and unambiguous in its legal meaning and the oral testimony to the effect that the saving clause should be interpreted to embrace and include bad market conditions as one of the intended causes for an abatement of the minimum royalty is inadmissible." The court aptly said that it "cannot make a different contract from that which the parties made for themselves."

The decree is reversed and the cause is remanded to the lower court with direction that an accounting be had in accordance with the prayer of the amended and supplemental bill, and that any damages shown to have been sustained by the appellant or her decedent, A. P. Pepper, by reason of the failure of the defendants to mine the premises in accordance with the terms of the lease, be ascertained and fixed, and for this purpose, if deemed advisable, the court should empanel a jury.

*Reversed and remanded.*