## In re DIXIE SPLINT COAL CO.

District Court, W. D. Virginia, at Big Stone Gap.

April 21, 1937.

284

A. K. Morison, H. E. Widener, and George M. Warren, all of Bristol, Va., for Mrs. Jean McNeil Pepper.

Henry Roberts, of Bristol, Va., M. M. Long, of St. Paul, Va., and I. M. Quillen, of Lebanon, Va., for Scott Litton.

Carl W. Hamilton and M. M. Heuser, both of Norton, Va., for trustee in bankruptcy.

PAUL, District Judge.

Jean McNeil Pepper, a creditor, has petitioned for a review of an order entered by the referee on February 22, 1937, the effect of which was to hold that a debt of Scott Litton was a secured debt and entitled to payment as such.

A chronological history of the matter in controversy is substantially as follows:

The Dixie Splint Coal Company is a family corporation of which Scott Litton is the principal stockholder; he is likewise president of the corporation. Other stockholders are his wife, his father-in-law and two brothers-in-law. The only other stockholder is one P. H. Smith, whose relationship to Scott Litton, if any, is not disclosed.

On July 1, 1931, A. P. Pepper instituted a suit in the Corporation Court of the City of Bristol against Dixie Splint Coal Company and Scott Litton for an accounting of the royalties due to Pepper in respect to coal taken from lands of which Pepper was owner and which Dixie Splint Coal Company was operating under a lease. This suit was pending for sometime during which A. P. Pepper died, and the litigation was carried on by Jean McNeil Pepper as executrix of A. P. Pepper.

On June 2, 1933, while the suit in Bristol was pending and probably in anticipation of its outcome, P. H. Smith, described as secretary and treasurer of the Dixie Splint Coal Company, appeared in the clerk's office of Russell County and caused the entry of a judgment by confession against the Dixie Splint Coal Company in favor of Scott Litton for $33,468.89. Execution was issued on this judgment on the day of its confession but no return was made thereon.

On February 19, 1934, a judgment was rendered in favor of Jean McNeil Pepper, executrix, against Dixie Splint Coal Company for $9,000, in the suit pending in Bristol. On motion of the defendant, execution on the judgment was suspended for ninety days to permit an appeal. Bond was fixed at $500. Apparently the defendant, after obtaining the stay of execution, decided not to prosecute an appeal from the $9,000 judgment against it. On the other hand, the complainant herself took an appeal on other phases of the case. See Pepper v. Dixie Splint Coal Company, 165 Va. 179, 181 S.E. 406.

On March 19, 1934, another execution was issued on the confessed judgment of Scott Litton against the Dixie Splint Coal Company and on the same date was levied upon the tangible personal property of the Coal Company.

On May 31, 1934, an execution was issued on the $9,000 judgment in favor of Jean McNeil Pepper, executrix, and levied on the property of the Coal Company on June 2, 1934. On the same day that the Pepper execution was levied, the sheriff gave notice of a sale of the property to satisfy the Litton judgment, the sale to be held on June 14, 1934. Just when Mrs. Pepper learned of the existence of the Litton judgment does not appear. It may have been before the notice of sale was given or this advertisement may have been her first knowledge of it; I do not know as to this. However, about this time, Mrs. Pepper instituted a suit in the Circuit Court of Russell County to have the Litton judgment declared void. The record does not show the date on which this suit was instituted but from a statement in one of the briefs I am informed that the bill was filed on June 13, 1934, the day before the sale under the Litton execution. The sale

under the Litton execution was held on June 14th and Litton himself became the purchaser of the property sold at the sum of $3,200.

On the day following this sale the sheriff filed a petition in court reciting the sale and stating that he had been notified by the Clinchfield Coal Corporation that it had a prior lien on all the property for a debt of $2,153 and demanding that so much of the proceeds of the sale as were necessary to pay this debt be paid to it. The petition of the sheriff was that Litton, Jean McNeil Pepper, executrix, and the Clinchfield Coal Corporation be interpleaded and compelled to answer and state their respective rights in the fund. No one seems to have questioned the prior rights of the Clinchfield Coal Corporation. Litton answered, admitting the right of the Clinchfield Corporation to have its lien paid out of the fund, and claimed the balance of the fund on his execution. Mrs. Pepper answered and (omitting formal recitations) her answer is as follows: "Without prejudice to her rights and claims asserted in the chancery cause of Jean McNeil Pepper, executrix, etc., against Scott Litton, et al., now pending in the Circuit Court of Russell County, Virginia, the general subject of which is to set aside and have declared void the judgment under which the sale was made, from which M. C. Chafin, Deputy Sheriff for N. F. Castle, derived the fund here in question, answers that she admits the priority of the lien asserted by Clinchfield Coal Corporation in the sum of Two thousand One hundred and Fifty Three dollars ($2,153)."

On July 18, 1934, an order was entered in the Circuit Court of Russell County directing the payment of $2,153 to the Clinchfield Coal Corporation; the balance of the fund was retained in custody of the Court. I have quoted above the answer of Mrs. Pepper in the interpleader proceeding because of its important part in later proceedings.

On September 4, 1934, Dixie Splint Coal Company filed its voluntary petition in bankruptcy; the order of adjudication was on September 7th and the first meeting of creditors was held on September 26th. At this meeting, as shown by the minutes, the claim of Scott Litton for $33,468.89 was filed as a preferred or secured claim. The claim bears the signature of I. M. Quillen as attorney for Litton. The same attorney is one of the firm of Quillen and Quillen who prepared and filed the petition in bankruptcy as attorneys for Dixie Splint Coal Company and appeared at the meeting as counsel for the bankrupt. A number of other claims were also filed, most of these being labor claims. There were only three general claims filed. At this meeting, P. H. Smith was chosen trustee and was authorized to employ I. M. Quillen as attorney for the trustee. The minutes of this meeting and orders entered show that the controversy between Mrs. Pepper and Litton over the latter's judgment was known and recognized, although Mrs. Pepper did not file her formal proof of claim in the bankruptcy proceeding until November 8, 1934.

On October 6, 1934, Mrs. Pepper in prosecution of her pending suit in the Circuit Court of Russell County to have the Litton judgment canceled and avoided, submitted her motion in that Court to quash all executions issued and outstanding on that judgment. Upon the hearing of this motion, Mr. Quillen, still acting as attorney for Litton, appeared in opposition to the motion, contending that the intervention of bankruptcy had deprived the State Court of further jurisdiction in the matter. The Judge of the State Court, without passing upon the question of his jurisdiction, continued the motion, apparently for the proper reason that he wished to have clarified the position of Mr. Quillen.

Thereupon, on October 15, 1934, Mrs. Pepper filed a petition before the referee in which she recited her motion in the State Court to quash the execution, the opposition thereto, and asked that the trustee be directed to appear in the State Court and submit to that Court the adjudication of the validity of the Litton judgment and that the State Court be requested to proceed with such adjudication. While this petition states that the attorney for the trustee had appeared in opposition to the motion to quash, it is asserted by Mr. Quillen that he appeared as attorney for Litton and not for the trustee, and the answer filed by him is on behalf of Litton. When Mrs. Pepper filed her petition on October 15th, asking that the trustee be directed to proceed in the State Court, Mr. Quillen objected to granting the prayer of the petition, stating that he did so as attorney for Litton. After some delay, a meeting of creditors was held on November 8, 1934, at which I. M. Quillen resigned as counsel

for the trustee and M. M. Heuser and C. W. Hamilton were designated to serve in that capacity. Shortly thereafter these last named attorneys informed the Court that in their opinion the Litton judgment was void and they asked authority for the trustee to institute a new and independent suit in the Circuit Court of Russell County to have it declared void. By an order of December 18, 1934, this authority was granted.

It may be here said that between the time of the first meeting of creditors and the institution of the suit by the trustee attacking the Litton judgment, certain general creditors withdrew their claims for some reason. There were also certain claims for labor which, due to the fact that the services had not been rendered within 90 days, took the status of general claims. Litton bought these claims for trivial amounts. So that, at the time the trustee instituted suit in the State Court, Mrs. Pepper apparently was the only general creditor concerned in the proceeding.

The foregoing lengthy recital of facts has been deemed advisable for a better understanding of the reason for conclusions hereinafter stated and views hereinafter expressed.

The trustee in bankruptcy, represented by Heuser and Hamilton, as authorized to do, instituted suit in the Circuit Court of Russell County seeking to have the Litton judgment declared void. As a result of that litigation, the court denied the relief prayed for and dismissed the proceeding. The Court expressed the view that the judgment was plainly void but held that the trustee was estopped to deny its validity. This estoppel, so the Court held, arose from the fact that Mrs. Pepper had filed her answer in the interpleader proceedings brought by the sheriff and had, in such answer, admitted the prior lien of the Clinchfield Coal Corporation. This action, the Court held, constituted a recognition of the validity of the fund from which the Clinchfield Corporation was demanding payment and which fund had been derived by an execution sale under the Litton judgment; that it was a recognition of the validity of the Litton judgment which estopped Mrs. Pepper from further question of that judgment. It further held that, inasmuch as Mrs. Pepper appeared to be the only then existing general creditor of the bankrupt estate, the estoppel against her acted also to estop the trustee in bankruptcy

who represented her and whose action was for her sole benefit. The attorneys for the trustee, having procured authority to do so, took an appeal from the judgment of the Circuit Court of Russell County to the Supreme Court of Appeals of Virginia, which Court affirmed the holding of the lower Court. See Smith v. Litton, 167 Va. 263, 188 S.E. 214.

The trustee having reported to the referee the affirmation by the Appellate Court of the judgment of the Circuit Court of Russell County, a creditors meeting was held on February 22, 1937, for the purposes of allowing certain costs, expenses, etc., and determining the amount of the fund subject to the Litton judgment. Shortly after the first meeting of creditors Mrs. Pepper had filed formal exceptions to the allowance of Litton's claim on the ground that it was based on a void judgment. This was done in support of and consistent with the attack which she was making on the judgment in her then pending suit in the State Court, and for protection of her rights in the bankruptcy court. The referee was not called on to act upon these exceptions pending the outcome of the litigation in the State Court.

At the meeting of February 22, 1937, the referee, acting on the basis of the holding of the State Court, held that the lien of the Litton judgment attached to the larger part of the fund in the hands of the trustee. The referee did not specifically pass upon the exceptions filed to the allowance of the Litton claim. In his certificate of review, he states that "while he did not enter a specific order dismissing the exceptions, the orders that were entered, in effect, do dismiss the exceptions. * * * The Referee considered and now considers that the decree of the Supreme Court of Appeals entirely disposes of all questions involved, there being no other creditors interested in this matter except Scott Litton and Mrs. Jean McNeil Pepper. If she was estopped to deny the validity of the judgment in the suit in the Circuit Court of Russell County, Mrs. Pepper would certainly now be estopped to deny the validity of the judgment in this Court, and it is now too late for her to question the lien of the judgment of Scott Litton." It is this order of February 22, 1937, which is before me for review.

■ The last sentence in the foregoing quotation from the certificate of the referee presents the view which explains his

reason for holding that Litton was a secured creditor as to this fund; but it indicates a misunderstanding on the part of the referee as to the duties and responsibilities of the bankruptcy court—duties which that court cannot delegate or ignore. Responsibility for the administration of estates in bankruptcy rests in this court alone and it is a responsibility which this court cannot abdicate.

In this case, the bankruptcy court, not from necessity but through comity, sought the aid of the State Court to determine a question material to the administration of the bankrupt estate, that question being whether a judgment entered in the clerk's office of that State Court was a valid judgment. The State Court did not adjudge either that the judgment was valid or that it was void. It held that because of some prior proceeding in that Court, to which one of the creditors of the bankrupt had been a party, neither that creditor nor the trustee who represented that creditor's interest could now be heard in that Court to challenge the validity of the judgment. The trial judge in the State Court recognized the limitations of his action when he said in his opinion "this court does not undertake to pass upon the validity of any claim made or to be made against the bankrupt, nor to the disposition to be made of the assets of the bankrupt estate".

The holding of the State Court that the trustee was estopped to attack the judgment there does not prevent this Court from considering its validity with respect to the administration of the bankrupt estate. See Lesser v. Gray, 236 U.S. 70, at page 74, 35 S.Ct. 227, at page 228, 59 L. Ed. 471, where it is said: "A bankruptcy court in which an estate is being administered has full power to inquire into the validity of any alleged debt or obligation of the bankrupt upon which a demand or claim against the estate is based."

See also In re Continental Engine Company, 7 Cir., 234 F. 58, where it was held that when a claim founded on a judgment rendered in the State Court was presented and its allowance sought in bankruptcy proceedings, it was not immune from attack by creditors who would be adversely affected by its allowance and the bankruptcy court had power to pass on its validity.

In Chandler v. Thompson, 7 Cir., 120 F. 940, a claim based on a judgment entered by confession in a state court was presented in the bankruptcy court and another creditor objected to its allowance on the ground that the confession of judgment was fraudulent. A holding of the lower court that the judgment could be impeached only in the court where it was rendered, was reversed by the Circuit Court of Appeals with directions to the District Court to inquire into the validity of the claim.

It is not necessary, in order for this Court to pass upon the validity of the Litton debt, to hold that the State Court was in error. I confess that I am unable to see that the action of Mrs. Pepper in filing an answer in the interpleader proceeding constituted an estoppel. Confronted with the process of the Court she filed an answer, as it was proper she should do. In this answer, she did nothing more than to admit the existence of a single undisputed fact, while at the same time insisting upon the invalidity of the judgment. Her answer sought no advantage for herself nor disadvantage to anyone else. The sale had already been made; she did not consent to it. The rights of no person were altered or sought to be altered by her answer. It seems to me also that in holding that the trustee was estopped, the State Court failed to consider another thing. It may be that at the time suit was brought by the trustee Mrs. Pepper was the only general creditor whose claim was then pending in the bankruptcy proceeding. The record does not establish this, but it is asserted, without denial, and I assume it to be true. But creditors in bankruptcy have six months from the date of adjudication within which to file their claims. The suit was brought before the expiration of that time. And in a situation of this sort, the trustee represents all creditors who may benefit by his action, including all excepting secured creditors. The trustee was not acting as representative of Mrs. Pepper alone. He was an officer of the bankruptcy court charged with the duty of conserving and protecting the interests of all creditors who might profit by his action and any action he took was not only on behalf of those who up until then had proved their debts but equally on behalf of others who might thereafter legally prove debts.

But, as I have stated, a determination of the matters here involved does not rest upon the question of the propriety of the State Court decision. Whether that decision be one with which I concur or

from which I dissent, it cannot affect the responsibility and the duty of this Court to act rightly upon those matters as to which it has been invested with the power and responsibility of acting.

It would be a strange situation if this Court, or any other, in a matter pending solely before it, were compelled to confess itself powerless to prevent the perpetration of such gross and obvious fraud as has been sought to be accomplished here. To do so would be to admit that the courts are without power to administer justice.

An examination of the facts disclosed here shows the history of a deliberate and carefully planned attempt on the part of Scott Litton and Dixie Splint Coal Company to avoid the payment of a just debt. I speak of Litton *and* Dixie Splint Coal Company because they are in reality the same. In all the experience of the law, there has never been a more prolific breeder of fraud than the one-man corporation. It is a favorite device for the escape of personal liability. This case illustrates another frequent use of this fiction of corporate entity, whereby the owner of the corporation, through his complete control over it, undertakes to gather to himself all of its assets to the exclusion of its creditors. A mere brief recital of the facts here is convincing that this was the case.

While the suit by Mrs. Pepper against Litton and Dixie Splint Coal Company was pending in Bristol, Litton caused the Dixie Splint Coal Company to confess a judgment in his (Litton's) favor in the clerk's office of Russell County. Perhaps it would be more accurate to say that he attempted it, because it seems to be generally conceded that there was no compliance with the statute and that the judgment is void. There would seem no doubt that this attempted confession of judgment was in anticipation that Mrs. Pepper would get a judgment in the pending suit. The instrument or agent whereby the confessed judgment was entered was P. H. Smith, designated as secretary and treasurer of the Dixie Splint Coal Company, and, of course, an employee of Litton and subservient to the latter's will.

Having gotten the so-called confessed judgment, Litton waited quietly until the outcome of the Pepper suit was definitely known. As soon as Mrs. Pepper got her judgment for $9,000, the Court was induced to suspend execution on it for ninety days upon the representation that an appeal was contemplated. No appeal was taken, but instead Litton returned to Russell County and, while execution on the Pepper judgment was suspended, caused an execution to issue on his confessed judgment. That Litton had no intention of trying to satisfy his confessed judgment against the Dixie Splint Company unless and until it became necessary to do so, but was using it only as a shield against the Pepper debt, is shown by the manner in which the execution on the confessed judgment was handled. It was issued on March 19, 1934, and a levy made the same day, but nothing was done at that time toward a sale of the property levied on. On May 31, 1934, Mrs. Pepper caused an execution to issue on her judgment which was levied on June 2nd; and this same date (June 2nd) the sheriff, who seems to have been cooperating with Litton, advertised the property for sale under the Litton levy made over two months before.

Thereafter, feeling confident that his confessed judgment would cover and consume the assets of his Dixie Splint Company, Litton caused that company to file a voluntary petition in bankruptcy. An examination of the schedules in bankruptcy shows the purpose and bad faith of this step. The bankrupt had at that time $4,-500 in bank and had notes and accounts receivable to the amount of over $12,000 most of which was good. The money in bank alone was more than sufficient to pay all creditors with the exception of Mrs. Pepper. The bankruptcy was plainly for the sole purpose of avoiding payment of the Pepper debt. In the course of the bankruptcy, Litton, in an effort to better his position, took assignments from a number of workmen who had unsecured claims and in some manner caused other claims to be "withdrawn". This course enabled the situation to be created whereby Mrs. Pepper was made to appear as the only general creditor and made possible the holding that the trustee, as her representative, was estopped to attack the Litton judgment.

It would be a travesty upon the administration of justice if this Court were to countenance the perpetration of such fraud as is disclosed here or confess itself unable to prevent it.

■ There are several matters in this case that call for reproof. It is plain that P. H. Smith should not have been selected as trustee. It does not appear upon whose

suggestion or nomination he was so selected, but it should not have been permitted. Smith was the man who had attempted to confess the disputed judgment which was then in controversy; he was an employee of Litton, and was not in position to be an earnest and aggressive representative of the general creditors.

It is equally plain that I. M. Quillen should not have been selected as attorney for the trustee. His firm represented the bankrupt and prepared and filed the petition in bankruptcy. He himself represented Litton and appeared for and filed Litton's claim at the first meeting of creditors. In spite of this and in the face of the known question as to the Litton judgment he was made attorney for the trustee whose duty it was to attack the Litton judgment. It is generally accepted that an attorney for the bankrupt should not be chosen attorney for the trustee in any case. And it is even more evident that an attorney who represents a creditor whose claim is under attack should not be chosen as attorney for the trustee who, on behalf of other creditors, is charged with the duty of making that attack.

It is said that Mr. Smith was chosen trustee because of his familiarity with the affairs of the bankrupt and that no creditor objected to his selection. It is said on behalf of Mr. Quillen that at the time of his appointment as attorney for the trustee the necessity for someone to act in such capacity was considered primarily with a view to collecting certain sums owing the bankrupt and that little or no thought was had of the controversy over the Litton judgment. But it is nevertheless a fact that the controversy over the Litton judgment was known at that time and it should have been evident to everyone concerned that the trustee would inevitably become a party to that controversy.

It was likewise inevitable that the conflicting positions occupied by Mr. Smith and by Mr. Quillen would become the subject of question and criticism. That they did is shown by a letter from the judge of the state court written to the referee on November 6, 1934, in the course of which it was said:

"Recently a motion has been made in this Court by counsel for Pepper, executrix, to quash the execution issued upon the Litton judgment, and that motion is still pending here. * * *"

"Mr. I. M. Quillen, an attorney of this place, is counsel for Scott Litton in the proceeding to quash the foregoing execution and for Mr. Litton is opposing the quashing thereof. He is also attorney for the trustee in bankruptcy, as I am advised whose duty it would be to ask that the execution be quashed, under the order recently entered."

At this time, Mr. Quillen, although he had been selected as attorney for the trustee on September 26th, continued to act as attorney for Litton and had appeared on behalf of Litton in the State Court on October 6th in opposition to the motion to quash execution on the Litton judgment. His asserted ground of opposition was that no action affecting the judgment could be maintained except by the trustee in bankruptcy. Yet when Mrs. Pepper thereafter on October 16th asked the bankruptcy court to direct the trustee to proceed against the judgment, Mr. Quillen, still acting for Litton, opposed this action, in derogation of the rights of the trustee whom he had been selected to represent. That counsel for Mrs. Pepper should have been confused as to the status in which Mr. Quillen was acting was excusable.

It is not the opinion of the Court and it is not intended to suggest that Mr. Smith or Mr. Quillen in accepting the respective positions of trustee and attorney for the trustee did so with any fraudulent plan or intention of utilizing their positions in aid of Litton and to the detriment of the estate which they represented, or that their activities in such positions were with any such purpose. It is intended, however, to point out that the impropriety of their selection should have been evident; that they occupied incompatible and conflicting positions; that such situations invoke suspicion and disrespect for the administration of the law. They should not be allowed to arise; or, having arisen, should be terminated as quickly as they are recognized.

The order of the referee of February 22, 1937, will be reversed in so far as any of its provisions are based upon the supposed validity of the Litton judgment. There has been no adjudication of the validity of this judgment by the referee and no formal adjudication of the exceptions filed in the bankruptcy court to the allowance of the Litton claim. It seems generally conceded that the Litton judgment is void, but I think this should be

definitely determined. The proceedings will be remanded to the referee with instructions to pass upon the status of the Litton claim from the standpoint of whether or not the judgment is void. If it is determined that the judgment is void and if Litton shall then desire to pursue his claim as a general creditor, then inquiry should be made into its validity as a general debt. In directing this course, the Court does not commit itself as to any action it may hereafter take in allowing or disallowing the claim. That action must wait upon a full disclosure of the facts regarding it.

It is further directed that no allowance be made from the bankrupt estate to I. M. Quillen for any alleged services as attorney for the trustee in connection with proceedings involving the Litton judgment.

It is further directed that for the present Mrs. Pepper is not required to pay the amount charged against her bond given in the appeal from the Circuit Court of Russell County and which, if I understand correctly, is $613.97. The items shown in this account seem to be proper in amount, but whether this should be paid by Mrs. Pepper or as an expense of the estate will await determination of the other questions upon which the Referee is herein required to pass.

I am not familiar enough with the various items of expense, etc., set forth in the order of February, 1937, but no payment of any sort should be made which is not appropriate to and in propriety with the views which I have expressed herein.