## FIDELITY NATIONAL TITLE INSURANCE COMPANY OF NEW YORK, Plaintiff,

v.

## Sandra BOZZUTO and Christina H. Dunn, Defendants.

### No. CIV. A. 98–49–A.

United States District Court, E.D. Virginia, Alexandria Division.

Nov. 12, 1998.

Richard A. Lash, Buonassissi, Henning, Campbell and Moffet, Fairfax, VA, for Plaintiff.

Steven B. Ramsdell, Tyler, Bartl, Burke, & Albert, Alexandria, VA, for Bozzuto.

Frederick W. Chockley, III, Baker and Hostetler, Washington, DC, for Dunn.

## MEMORANDUM OPINION

ELLIS, District Judge.

In this diversity action, a title insurance company sues officers of one of its corporate sales and servicing agents to recover premiums due on policies sold by the corporate agent. Specifically, plaintiff Fidelity National Title Insurance of New York ("Fidelity") asserts various tort and contract claims against defendants Sandra Bozzuto and Christina H. Dunn, shareholders and officers of Fidelity Title Service Corporation ("FTS"), one of Fidelity's sales and service agents. Pertinent here are the three claims Fidelity asserts against Dunn: (1) breach of the contract between Fidelity and FTS on an alter ego theory (Count I), (2) breach of Dunn's separate contract with Fidelity (Count III), and (3) conversion (Count IV). Dunn moves for summary judgment on all three claims on the grounds that they are barred (i) by the application of the Bankruptcy Code's automatic stay provision, 11 U.S.C. § 362(a), and (ii) by the general release of Dunn executed by the bankruptcy Trustee in *Greenfeld, Trustee v. Dunn,* Adversary No. 96–1247–PM, United States Bankruptcy Court for the District of Maryland, Greenbelt Division. For the reasons stated from the Bench, and as elucidated here, Count I must be dismissed, but Counts III and IV are not barred by either the § 362(a) automatic stay or the Trustee's general release of Dunn.

### I.

Fidelity, a New York corporation, is a title insurance underwriter that does business in numerous states through sales and servicing

agents. Its agent in Virginia, Maryland and Washington, D.C. pursuant to a written Agency Issuing Agreement, dated June 16, 1993, was FTS, a corporation owned and operated by Bozzuto and Dunn, who were officers, directors, and shareholders of FTS.[1] Dunn was not personally a party to the Issuing Agency Agreement, but had been previously appointed, through a Virginia State Corporation Commission Bureau of Insurance "Individual Appointment Form," as an individually appointed and licensed issuing agent of Fidelity in the Commonwealth of Virginia, beginning May 14, 1991 and continuing throughout the relevant time period. Under the Issuing Agency Agreement, FTS (i) issued title insurance policies on Fidelity's behalf, (ii) received premiums for issued policies and (iii) was required to remit the premiums, minus a commission, to Fidelity.

Prior to and after the signing of the Issuing Agency Agreement, FTS, Fidelity and third-party individuals and corporations entered into various Tri–Party Issuing Agency Agreements, under which FTS functioned as an intermediary between Fidelity and the third-party agents who had direct relationships with the purchasers of title insurance. In this connection, FTS (i) supplied the third-party agents with Fidelity policies, (ii) collected the premiums on the policies they issued, and (iii) forwarded the premiums, minus a commission, to Fidelity.

On October 3, 1994, FTS filed for Chapter 11 protection in the United States Bankruptcy Court for the District of Maryland. On the same day, Fidelity sent FTS notice terminating the Issuing Agency Agreement. Thereafter, on April 4, 1995, the FTS bankruptcy proceeding was converted from Chapter 11 to Chapter 7. On November 25, 1997, Fidelity filed a Second Amended Proof of Claim in the FTS bankruptcy in the amount of $418,411.78, the amount of the premiums Fidelity claimed were due and owing under the various agency agreements.

On July 2, 1996, the FTS bankruptcy Trustee initiated an adversary proceeding against Dunn, alleging that Dunn received from FTS a series of fraudulent conveyances and preferential transfers, impermissible under the Bankruptcy Code, totaling approximately $589,133.01.[2] In the end, Dunn and the Trustee agreed to settle all of FTS's claims against Dunn for $75,000, a settlement that was attacked by Fidelity, but ultimately approved by the bankruptcy court after a hearing on January 14, 1998. At the hearing, the bankruptcy court offered Fidelity the opportunity to purchase the Trustee's claims against Dunn, an opportunity Fidelity declined; the bankruptcy court then entered an order approving the settlement. The settlement approved by the bankruptcy court is memorialized in a General Release and Agreement executed by the Trustee on March 3, 1998, in which the Trustee released Dunn from any liability she might have relating to FTS, the FTS bankruptcy estate, and the Trustee's adversary proceeding against her.

Unable to recover its lost premiums from FTS, Fidelity seeks here to recover from Dunn and Bozzuto, FTS's owners and operators. At issue with respect to Dunn is whether the claims against her are barred by the § 362(a) automatic stay or by the res judicata effect of the general release.

## II.

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Dunn argues that summary judgment is warranted under two theories: (i) Fidelity's claims must be stayed pursuant to the automatic stay provi-

---

1. Not before the Court is Fidelity's separate claim against Bozzuto (Count II) based on a personal guarantee Bozzuto signed explicitly guaranteeing FTS's performance under the Issuing Agency Agreement.

2. The Trustee did not assert any other claims, such as breach of fiduciary duty or any claim on an alter ego theory.

sion of the Bankruptcy Code, 11 U.S.C. § 362(a) because they implicate the property of the bankruptcy estate, and (ii) even were the stay inapplicable, Fidelity's claims are barred by res judicata principles given the Trustee's signed release of all claims against Dunn.

## A. The automatic stay provisions of § 362(a)

 Section 362(a) of the Bankruptcy Code automatically stays actions "against the debtor" or "to obtain possession of property of the [debtor's] estate." 11 U.S.C. § 362(a)(1) and (3).[3] The purpose of § 362 is to insure " 'that the debtor's affairs will be centralized, initially, in a single forum in order to prevent conflicting judgments from different courts and in order to harmonize all of the creditors' interests with one another.' " *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 998 (4th Cir.1986). Significantly, § 362 does not generally apply to related suits against non-bankrupt third parties.[4] In those suits, the stay applies only in "unusual circumstances," where such identity exists between the debtor and the third party that " 'the debtor may be said to be the real party defendant and that a judgment against the third-party will in effect be a judgment or finding against the debtor,' " or where the action will affect " 'the property of the debtor [such as the debtor's insurance fund or pool] to the detriment of the debtor's creditors as a whole.' " *See Credit Alliance*, 851 F.2d at 121.[5] Absent such unusual circumstances, the § 362(a) automatic stay applies to a claim against a non-bankrupt third party only where the claim, pursuant to 11 U.S.C. § 541, amounts to an "act to obtain possession of property of the estate or ... to exercise control over property of the estate." *See, e.g., Steyr–Daimler–Puch of America Corp. v. Pappas*, 852 F.2d 132 (4th Cir.1988) (hereinafter *SDP*).[6] In this regard, a bankruptcy estate is comprised of "all legal and equitable interests of the debtor including choses of action." *Id.* at 136. *SDP* teaches that federal bankruptcy law looks to state law for definition of what interests are rights of the debtor or creditors of the debtor and any claim the debtor could assert under state law is property of the estate. *See id.* at 135.

 In this case, no "unusual circumstances" warrant a broader application of the § 362(a) automatic stay, as (i) the Trustee has settled all of its claims against Dunn, and thus has no continuing interest in her assets, *i.e.*, a judgment against Dunn in this action will not negatively affect the funds available to the creditors as a whole, and (ii) the Trustee has indicated a willingness to provide Fidelity support in pursuit of its claims.[7]

---

**3.** Section 362(a) provides: "Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

. . . .

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.

**4.** *See Credit Alliance Corp. v. Williams*, 851 F.2d 119, 121 (4th Cir.1988) ("[T]he automatic stay provision of the Bankruptcy Code stays proceedings against the debtor only, and ... no such relief is available to the non-bankrupt guarantor.").

**5.** *See also In re the Litchfield Co.*, 135 B.R. 797, 803 (W.D.N.C.) (implicitly finding "unusual circumstances" where one relatively minor creditor threatened to disrupt the reorganization plan by seeking assets the debtor could seek for the benefit of all creditors).

**6.** *SDP* involved an appeal from a dismissal of an action brought by a creditor against a corporation's alter ego. As in this case, the trustee had earlier brought an action against the alleged alter ego, and settled that action, releasing all claims against the alleged alter ego.

**7.** A trustee has full authority over all claims that are property of the estate; thus, such claims cannot be pursued unless there has been a judicial determination that the trustee has abandoned the claim. *See SDP*, 852 F.2d at 136. Though no judicial determination of any claim occurred here before the Trustee's judicially-approved release of Dunn, the Trustee's letter to Fidelity granting the latter access to all the debtor's books and records for a suit against Dunn reflects his lack of objection to the claims asserted.

Thus, the question here becomes whether any of the three claims Fidelity asserts against Dunn (i) belong to the debtor or (ii) are in any other way an "act to exercise control over the property of the estate."

### 1. The Alter Ego Claim

 *SDP* controls disposition of the instant alter ego claim. That decision holds that under Virginia law, alter ego claims [8] are the property of the debtor, and hence may be brought by a bankruptcy trustee pursuant to 11 U.S.C. § 541.[9] This holding seems to fit Count I, which asserts a breach of contract claim on an alter ego theory.[10] There is, arguably, some doubt about this conclusion and the precise scope of *SDP* given that the specific cause of action through which the alter ego theory was asserted is not made clear in the opinion. But this doubt is dispelled when it is noted that *SDP* cites and relies on a Fifth Circuit decision that makes clear that the § 362(a) automatic stay operates to bar actions seeking to hold third parties liable for a corporation's contractual debts on an alter ego theory. *See SDP*, 852 F.2d at 136 (citing *In re S.I. Acquisition, Inc.*, 817 F.2d 1142, 1153 (5th Cir.1987)).[11]

Thus, it is clear that under *SDP*, the § 362(a) automatic stay would ordinarily apply to bar prosecution of Fidelity's alter ego claim against Dunn. *See id.*[12] In this case, however, the Trustee has executed a general release of its claims against Dunn, and it is therefore difficult to identify any further interest the bankruptcy Trustee would have in the assets of Dunn and thus any justification for application of the automatic stay. *SDP*, which also involved a judicially approved general release by the trustee, might be read to suggest that the stay does apply in these circumstances.[13] Yet, a close reading of *SDP* reveals that the Fourth Circuit did not stay the claim, but rather dismissed it because it had been compromised by the Trustee through the general release.[14] Thus, here, as in *SDP*, analysis of the preclusive effects of the Trustee's general release under res judicata is required to determine whether Fidelity may proceed on the basis of its alter ego claim.

### 2. The Contract Claim and the Conversion Claim

 Counts III and IV allege breaches of duties Dunn owes directly, not derivatively,

---

**8.** "Alter ego claims" include those claims against a debtor company that a creditor of that debtor has against non-bankrupt individuals or entities who under state law acted as the alter ego of the debtor company in the relevant circumstances. *See, e.g., SDP*, 852 F.2d at 136; *see In re S.I. Acquisition, Inc.*, 817 F.2d 1142, 1153 (5th Cir. 1987) (applying stay to action against alter ego to recover contractual debt owed by debtor corporation); *see also Pepper v. Dixie Splint Coal Co.*, 165 Va. 179, 181 S.E. 406, 410 (1935) (holding corporations "one and the same" on basis of ultimate control, complete dominance and ownership). The alter ego doctrine is a method of imposing liability on an underlying cause of action, not an independent cause of action. *See Shearson Lehman Hutton, Inc. v. Venners*, No. 97–1849, slip op. at 4, 1998 WL 761505 (4th Cir. Nov. 2, 1998) (affirming dismissal of separate cause of action based solely on alter ego theory).

**9.** *See SDP*, 852 F.2d at 135 ("Section 541(a) brings the right of [the debtor] to proceed against its alter ego and claim its equitable interest in assets of the alter ego into the bankrupt estate.").

**10.** Specifically, Count I alleges that because FTS was merely Dunn's instrumentality, Dunn was in effect a party to the contract and is thus liable for FTS's breaches.

**11.** Although referring to Texas law, in *S.I. Acquisition*, the Fifth Circuit expressly addressed the arguments made by plaintiff here:

> [W]e recognize that an action based on alter ego allegations is assertable, and is usually asserted, by the debtor corporation's creditors. But this fact does not negate our conclusions...that nothing in Texas law prohibits a corporation from asserting on its own an action based on alter ego and that in fact the underlying policy of the remedy supports this conclusion.

*See S.I. Acquisition, Inc.*, 817 F.2d at 1153.

**12.** *See also S.I. Acquisition, Inc.*, 817 F.2d at 1153 ("[T]o allow [Fidelity's claims] to proceed would undercut the general bankruptcy policy of ensuring that all similarly-situated creditors are treated fairly.").

**13.** *See SDP*, 852 F.2d at 136 (stating that "the automatic stay applies" because alter ego claim is property of the estate).

**14.** *See id.* at 135 ("Since the trustee previously compromised [the alter ego] claim with [the alter egos], the district court was correct in dismissing [plaintiff's] complaint asserting the claim.") and at 136 ("The Trustee succeeded to that right and compromised it with the alter egos.").

to Fidelity. These breaches of duties are independent of any breach of duty by FTS, and are not based on any theory available either to the debtor or to all creditors. Specifically, plaintiff's breach of contractual duty claim is based on Dunn's separate contract with Fidelity, a contract that imposed obligations on Dunn separate and distinct from any obligations of FTS to Fidelity. The conversion count similarly rests on Dunn's duty to Fidelity that is separate and distinct from any duty FTS may have owed Fidelity; it alleges that the property misappropriated, minus the commission payments due to FTS, was Fidelity's property, held in trust for Fidelity by both Dunn and FTS as agents of Fidelity. Thus, the conversion claim in Count IV, like the contract claim in Count III, is based on an independent duty of Dunn to Fidelity. Given this, the claims in Counts III and IV are distinguishable from · the claims asserted in *SDP;* they are not property of the debtor's estate and are not barred by application of the § 362(a) automatic stay. *See, e.g., In re Phar–Mor, Inc. Securities Litigation,* 166 B.R. 57, 62 (W.D.Pa.1994) (creditor claims for negligence belong to creditor when do not rely on breach of obligations or duties to debtor but instead are based on breach of duty of care to individual creditor).[15] As the § 362(a) automatic stay does not apply to these claims, it is necessary to consider whether they are barred by the res judicata effect of the general release.

## B. Res Judicata

■■■■ Res judicata bars relitigation in a second suit involving the same parties or their privies based on the same cause of action if the court in the first suit issued a judgment on the merits. *See Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). Res judicata, sometimes referred to as claim preclusion, provides that "if the later litigation arises from the same cause of action as the first, then the judgment bars litigation not only of every matter actually adjudicated in the earlier case, but also of every claim that might have been presented." *In re Varat Enterprises, Inc.,* 81 F.3d 1310, 1315 (4th Cir. 1996). In this circuit, res judicata requires: "(1) a judgment of on the merits in a prior suit resolving (2) claims by the same parties or their privies, and (3) a subsequent suit on the same cause of action." *See Coyne & Delany Co. v. Selman,* 98 F.3d 1457, 1473 (4th Cir.1996).

■■■■ The parties agree that the settlement agreement and general release approved by the bankruptcy court in this case satisfies the first requirement, but disagree as to the second and third. With respect to the second requirement, Dunn contends that the bankruptcy trustee and a creditor are the same entity for res judicata purposes. This contention is overbroad. Certainly any claims that belong to the debtor, and hence could have been brought by the Trustee, were released when the Trustee signed the general release with Dunn.[16] Thus, Count I, the alter ego claim, would be barred by res judicata. *See SDP,* 852 F.2d at 135 (district court correctly dismissed previously compro-

**15.** Some authority has suggested that 11 U.S.C. § 544 empowers a bankruptcy trustee to assert, on behalf of creditors, claims such as Counts III and IV that do not belong to the debtor, but are instead independent claims of creditors. *See, e.g., Koch Refining v. Farmers Union Cent. Exch.,* 831 F.2d 1339, 1346 (7th Cir.1987). *SDP* expressly declined to reach this issue, even though the district court decided that a trustee has the power to assert claims on behalf of creditors under § 544. *SDP,* 852 F.2d at 135–36. A recent well-reasoned opinion within the Fourth Circuit, *In re Miller,* 197 B.R. 810 (W.D.N.C. 1996) surveyed the cases and concluded that neither § 544's language nor its legislative history supported such an interpretation. *Miller's* analysis and the plain language of § 544 compel the conclusion that § 544 does not provide a

trustee with the power to assert independent claims of an individual creditor that could not be asserted by the corporation. Thus, § 544 does not provide a basis for bringing Fidelity's independent claims (Counts III and IV) into the bankruptcy estate and thus within the reach of the § 362(a) automatic stay. *See In re Ozark Restaurant Equipment Co.,* 816 F.2d 1222, 1226–30 (8th Cir.1987); *Steinberg v. Buczynski,* 40 F.3d 890, 893 (7th Cir.1994).

**16.** *See SDP,* 852 F.2d at 136; *In re Varat,* 81 F.3d at 1315; *see also Virginia Impression Prod. Co. v. S.C.M. Corp.,* 448 F.2d 262, 265 (4th Cir.1971) (general release bars known and unknown claims of every kind or character).

mised alter ego claim).[17] But that principle is not applicable with respect to Counts III and IV, as neither of these counts assert claims that might have been brought by the Trustee. Thus, with respect to these claims, the Trustee cannot be equated with Fidelity or be considered "in privity" with Fidelity. Put another way, the Trustee and Fidelity cannot be considered "privies" with respect to Counts III and IV because these claims belong independently to Fidelity and the Trustee had no power to assert Fidelity's independent claims. Moreover, although Fidelity participated in the bankruptcy proceeding to object to the Trustee's settlement, it had no right or authority to assert its own independent grounds of action in that proceeding. Thus, these claims are not claims that "might have been presented," and res judicata cannot apply to bar plaintiff's Counts III and IV. *See In re Varat*, 81 F.3d at 1315.

### III.

Under controlling Fourth Circuit precedent, summary judgment must be granted as to Count I, as it is an alter ego claim that could have been asserted by the Trustee and hence is barred by the res judicata effect of the general release. Summary judgment must denied as to Counts III and IV, which are independent claims of Fidelity's that could not have been asserted on its behalf by the Trustee, and thus are neither affected by § 362 nor barred by res judicata.[18]

---

17. As to Fidelity's alter ego claim, the trustee can be considered to have "stepped into the shoes" of the creditors in a way sufficient to satisfy the privity requirements of res judicata. Privity is defined as "mutual or successive relationship to the same rights of property." Black's Law Dictionary (4th Ed.1957). Under Virginia law, a creditor asserting an alter ego theory essentially asserts its successive rights to the corporation's property; the creditor has a right to the alter ego's property because it is in fact the property of debtor corporation. *See SDP*, 852 F.2d at 136 ("Under Virginia law, a corporation has an equitable interest in the assets of an alter ego because the corporation and the alter ego are 'one and the same.'"). Thus, a bankruptcy trustee's release of the debtor corporation's rights bars the creditor's ability to succeed to those rights.

18. Dunn also seeks actual and punitive damages, as well as attorneys' fees and costs, under § 362(h), which allows an individual injured by a willful violation of the § 362(a) automatic stay to recover actual damages, including costs and attorneys' fees, and punitive damages in appropriate circumstances. *See* 11 U.S.C. § 362(h). No such damages are appropriate here as the stay does not apply to any of the counts, although, in other circumstances, it would have applied to Count I. Even assuming, *arguendo*, that § 362(a) operated to stay Count I in these circumstances, no damages would be appropriate in this case, because (i) there is no evidence of injury from violation of the stay as § 362(a) would apply to only one of the claims presented, (ii) the stay is asserted not by the debtor but by a non-bankrupt third party, rendering doubtful the knowledge of the stay required for a finding of willfulness, and (iii) there is no egregious violation of the stay justifying punitive damages. *See Davis v. IRS*, 136 B.R. 414, 423 (E.D.Va.1992) (punitive damages for willful violation of § 362 automatic stay only appropriate if misconduct is egregious or vindictive); *In re Hendry*, 214 B.R. 473, 475 (Bankr.E.D.Va.1997) (willful violation requires knowledge of the stay and intentional act); *In re Ayscue*, 1995 WL 908383, *2 (E.D.Va. 1995) (individual seeking damages must be injured in fact by violation).