Raymond LEANNAIS and Catherine Leannais, Plaintiffs,

v.

CINCINNATI, INCORPORATED and Cincinnati-Forte Company and Liberty Mutual Insurance Company, Defendants.

No. 77–1066.

United States Court of Appeals,

Seventh Circuit.

Argued May 25, 1977.

Decided Oct. 18, 1977.

John A. Hamell, Jr., Wauwatosa, Wis., for plaintiffs.

James R. Gass, Russell M. Ware, Milwaukee, Wis., for defendants.

Before FAIRCHILD, Chief Judge, and WOOD, Circuit Judge, and MARKEY, Chief Judge.[1]

MARKEY, Chief Judge.

On April 20, 1973, appellant Raymond Leannais was injured while operating a coil slitter machine incident to his employment at Fullerton Metals Company in Milwaukee, Wisconsin.

In this diversity suit, Leannais and his wife (Leannais) sought damages from Cincinnati, Inc., and Cincinnati-Forte Co., (Cincinnati), the alleged corporate successors to the original manufacturer of the machine. The complaint alleges strict liability, negligence in the design and manufacture of the machine, and failure to warn potential users after serious injuries had occurred. In view of affidavits filed by both parties, the court granted summary judgment for Cincinnati.[2] We reverse and remand.

### FACTS

The machine on which Leannais was injured had been manufactured by Forte Equipment Company (Forte) and sold to Fullerton in late 1964. In December, 1967, Forte sold its assets to Cincinnati, Inc., an Ohio corporation, for cash and certain employment agreements. Cincinnati, Inc., established a subsidiary named Cincinnati-Forte to accept the Forte assets. The subsidiary was dissolved in 1973 and the assets of Cincinnati-Forte were purchased by Cincinnati, Inc.

In the Forte-Cincinnati, Inc. agreement, Cincinnati expressly limited its liability for personal injury caused by Forte for a period of five years from the December 6, 1967 closing date of the contract, and agreed to use its best efforts to secure a specific amount of insurance against such claims during that time.[3] No other liability for

---

1. The Honorable Howard T. Markey, Chief Judge of the United States Court of Customs and Patent Appeals, is sitting by designation.

2. Cincinnati-Forte Co. was dismissed for want of service of process. Leannais does not appeal that action.

3. The only liability for personal injury claims of this nature assumed by Cincinnati is set forth in paragraph 11(q) of the Purchase Agreement:

(q) With respect to any claim by a third party, notice of which is given to Forte or Cincinnati within five (5) years of the Closing Date, based on personal injury allegedly caused by Forte Equipment as defined in Paragraph 3(b) above, whether such claims be made against Forte or Cincinnati, Cincinnati shall undertake to obtain, and shall use its best efforts to secure, insurance at its expense against such claims in the amount of Five Hundred Thousand ($500,000) Dollars, Toczyl and Rogalla shall apply and use their best efforts, experience and knowledge to aid in the investigation, defense and adjustment of such personal injury claims, with a view toward minimizing the effect of such claims and protecting the joint interests of the parties to this Agreement. As to each loss, damage or deficiency resulting from any such claim, or cost or expense in connection with the investigation, defense or adjustment thereof, to the extent not compensated by insurance and not assigned to Cincinnati or to Forte under Subparagraphs (b) and (c) of Paragraph 4, Forte, Toczyl or Rogalla, or any or all of them, jointly and severally, shall be liable to Cincinnati, and shall pay upon demand by Cincinnati, an amount equal to twenty-five percent (25%) of said loss, damage or deficiency and costs and expenses relating thereto. Nevertheless, the aggregated liability of Toczyl and Rogalla under this Subparagraph (q) shall not exceed the lesser of (i) $100,000 or (ii) the aggregate amount of the payments under subpart (4) of Paragraph 3(a) over the five-year period set forth in said subpart. Furthermore, in the event of termination of employment of either Toczyl or Rogalla or both pursuant to Paragraph 3(d), said liability of Toczyl and Rogalla for loss, damage, deficiency and costs and expenses relating thereto after such termination will be reduced to the lesser of (i) $50,000 for each

personal injury claims was assumed. Cincinnati was first notified of Leannais' injury in July, 1975, more than seven years after the acquisition of Forte's assets.

## THE ISSUE

The issue before us is whether Cincinnati can be held liable for appellant's injury (1) under "corporate merger" or "continuation" theories, (2) under a "product line" theory of strict tort liability, or (3) because it negligently failed to warn of the potentially dangerous condition of the machines. The parties agree that Wisconsin law applies. That state being the situs of the injury and the residence of Leannais, it has the principal interest of any state in the rules of law to be applied.

## OPINION

### "MERGER" OR "CONTINUATION"

■ The general rule in the majority of American jurisdictions, including Wisconsin, is that a corporation which purchases the assets of another corporation does not succeed to the liabilities of the selling corporation. *Bazan v. Kux Machine Co.,* 358 F.Supp. 1250 (E.D.Wis.1973). Here, Cincinnati had no part in the design, manufacture, sale or distribution of the allegedly defective machine, and the general rule accords with the fundamental principle of justice and fairness, under which the law imposes responsibility for one's own act and not for the totally independent acts of others. There are, however, four well-recognized exceptions to the general rule under which liability may be imposed on a purchasing corporation: (1) when the purchasing corporation expressly or impliedly agreed to assume the selling corporation's liability; (2) when the transaction amounts to a consolidation or merger of the purchaser and seller corporations; (3) when the purchaser corporation is merely a continuation of the seller corporation; or (4) when the transaction is entered into fraudulently to escape liability for such obligations. *Forest Laboratories, Inc. v. Pillsbury Co.,* 452 F.2d 621 (7th Cir. 1971), *Bazan v. Kux Machine Co., supra.*

■ Leannais contends that the transaction here falls under exceptions (2) or (3), i. e., that there was a "merger" of the two corporations or that Cincinnati is a "mere continuation" of Forte. A merger, however, involves the actual absorption of one corporation into another, with the former losing its existence as a separate corporate entity. That did not happen here. When the seller corporation retains its existence while parting with its assets, a "de facto merger" may be found if the consideration given by the purchaser corporation be shares of its own stock. *Bazan v. Kux Machine Co., supra, McKee v. Harris-Seybold Co.,* 109 N.J.Super. 555, 264 A.2d 98 (1970).[4] Here, no stock in Cincinnati or in

determined separately and not jointly, or (ii) the aggregate amount of the payments under subpart (4) of Paragraph 3(d). Cincinnati's right of offset under this Subparagraph shall be limited to amounts otherwise payable under subpart (4) of Paragraph 3(a).

Notwithstanding anything else set forth herein, no assumption by Cincinnati nor agreement or indemnification by Forte shall constitute a recognition that any third person is a proper creditor of or claimant against Forte or Cincinnati, nor shall any such agreement or assumption or indemnification revive or make valid, or operate as a recognition of the validity of, or as a waiver of any defense or counterclaim in respect of, any claim against any of such corporations, its assets, directors, officers or shareholders, whether such claim has been barred by any statute of limitations, or has become or is invalid or unenforceable for any cause, or in respect of which any such corporation, its officers, directors or shareholders has any defense or counterclaim.

4. *But see Turner v. Bituminous Casualty Co.,* 397 Mich. 406, 244 N.W.2d 873 (1976) wherein the Michigan Supreme Court in a 3 to 2 decision (2 Justices not participating) adopted a rule which removed the stock requirement and held that cash consideration is sufficient to establish a continuation of corporate responsibility for products liability if:

(1) There was basic continuity of the enterprise of the seller corporation, including, apparently, a retention of key personnel, assets, general business operations, and even the [corporate] name.

(2) The seller corporation ceased ordinary business operations, liquidated, and dissolved soon after distribution of consideration received from the buying corporation.

(3) The purchasing corporation assumed those liabilities and obligations of the seller

Cincinnati-Forte was transferred as consideration for Forte's assets.[5] A "consolidation" occurs when two combining corporations are dissolved and lose their identity in a new corporate entity. *Forest Laboratories, Inc. v. Pillsbury Co., supra.* Cincinnati maintained its distinct corporate identity from a time prior to and throughout the transactions herein to the present day. The key element of a "continuation" is a common identity of the officers, directors and stockholders in the selling and purchasing corporations. Unlike the situation in which a new corporation merely takes over the assets of the selling corporation under the old management,[6] the management of Forte was not carried over to Cincinnati. Nor did any shareholder of either corporation become an owner, director, or officer of the other.

We conclude, therefore, that the purchase of Forte's assets was not such as to bring it within either the "merger" or the "mere continuation" exception to the general rule. Cincinnati did not impliedly assume Forte's liability and its express assumption in paragraph 11(q) of the Purchase Agreement was limited to the five years stated. No allegation of fraudulent conduct having been made, the transaction must be viewed as a bona fide, arm's length bargain, valid under Wisconsin law. It is thus clear that Cincinnati is not liable for the injury to Leannais under any of the traditional exceptions to the general rule respecting purchaser corporations.

## "PRODUCT LINE"

Leannais also asserts a form of "tort" theory founded on "strict liability," and extension of the law of purchaser corporation liability exemplified by the recent case of *Ray v. Alad Corp., supra* note 6. Ray sued a corporation which had purchased the assets of a ladder manufacturer, claiming injury from a defective ladder made by that manufacturer. Finding no basis for liability under the traditional exceptions discussed above, the California Supreme Court relied upon policy considerations. Drawing analogies from the treatment of certain labor law problems of successor corporations by the United States Supreme Court, *Howard Johnson Co. v. Hotel Employees,* 417 U.S. 249, 94 S.Ct. 2236, 41 L.Ed.2d 46 (1974), *Golden State Bottling Co. v. NLRB,* 414 U.S. 168, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973), the court created a special "strict tort liability" exception to protect "otherwise defenseless victims of manufacturing defects" and to spread *"throughout society . . . the cost of compensating them."* (original emphasis) [7]

ordinarily necessary for the continuation of the normal business operations of the seller corporation.

(4) The purchasing corporation held itself out to the world as the effective *continuation* of the seller corporation. 244 N.W.2d at 883–884. [Emphasis added.]

5. In *Knapp v. North American Rockwell Corp.,* 506 F.2d 361 (3d Cir. 1964) *cert. den.* 421 U.S. 965, 95 S.Ct. 1955, 44 L.Ed.2d 452 (1975), the court found a merger, even though the manufacturer, whose assets had been exchanged for Rockwell stock, continued in existence for nearly 18 months after the sale. Leannais' comparison of the facts here with those in *Knapp* lacks a key element, the transfer of stock as consideration for the assets.

6. In *Cyr v. B. Offen & Co., Inc.,* 501 F.2d 1145 (1st Cir. 1974), a jury finding of liability on the part of a successor corporation as a "continuation" was affirmed. A defective printing press was manufactured by a sole proprietorship company which, upon the death of the proprietor, was sold by his estate to a corporation made up of one outside financier and key employees of the former company. The employees received 70% of the stock in the new corporation and the financier received 30%. The court followed labor law analogies and strict liability policy considerations much like those discussed in *Ray v. Alad Corp.,* 19 Cal.3d 22, 136 Cal.Rptr. 574, 560 P.2d 3 (1977), *infra,* to expand the traditional rule. *Cyr,* however, has no application here, no employees of Forte having become stockholders in Cincinnati, and nothing of record indicates that Wisconsin would not follow the traditional rule in denying the existence of the "continuation" exception in the present case.

7. The court relied heavily on the underlying purpose stated in *Greenman v. Yuba Power Products, Inc.,* 59 Cal.2d 57, 63, 27 Cal.Rptr. 697, 701, 377 P.2d 897, 901 (1963). With deference, grave risks arise from court adoption of policy considerations to effect a change in a law so fundamental to the interdependent economic segments of a complex society. Whether the mounting costs of such change can be absorbed by insurance, whether product liability costs may grow so high in one state as to

In essence, the court adopted a rule tied to the "product line":

> We therefore conclude that a party which acquires a manufacturing business and continues the output of its line of products under the circumstances here presented assumes strict tort liability for defects in units of the same product line previously manufactured and distributed by the entity from which the business was acquired. 136 Cal.Rptr. at 582, 560 P.2d at 11.

The record here contains not the slightest indication that Wisconsin courts have created, or would create, such a far-reaching exception to the non-liability of asset purchasers, so long the basis of economic decisions by its citizens. It is on occasion absolutely necessary, if justice be done, for courts to "legislate" within the "interstices" of a statute, or by analogy to other laws and judicial precedents. In recent years, for a variety of reasons, many have thought it necessary to turn to the courts in search of solutions to social problems. Courts are ill-equipped, however, to balance equities among future plaintiffs and defendants. Such forays can result in wide-ranging ramifications on society, the contemplation of which is precluded by the exigencies of deciding a particular case presented on a limited record developed by present parties. Absent compelling necessity, therefore, a Federal Court should not impose the policy pronouncements of the Supreme Court of one state upon the citizens of another. Nor are we at liberty to impose our own view as to what the law of Wisconsin should be. As the Wisconsin Supreme Court has recognized, such broad public policy issues are best handled by legislatures with their comprehensive machinery for public input and debate. *Holifield v. Setco Industries, Inc.,* 42 Wis.2d 750, 758, 168 N.W.2d 177 (1969).

Indeed, the 1977 Wisconsin legislature by Joint Resolution, has directed its legislative council to conduct a complete study of the problems here presented, i. e., those related to product liability, and to recommend necessary legislation. State of Wisconsin, 1977 Assembly Joint Resolution 16, January 19, 1977.

■ Under all the circumstances, therefore, we hold that there is no "product line" theory transferring to a purchaser corporation the liabilities of the seller under Wisconsin law.[8]

As a matter of law, therefore, Cincinnati did not assume, by virtue of the Purchase Agreement, the obligation to insure against Forte's product liabilities beyond those of which notice was received within five years. Leannais' claim did not arise during that period. Cincinnati cannot be held liable under Wisconsin law in strict liability for injury resulting from defects in the coil slitter designed, manufactured, and delivered by Forte.

## FAILURE TO WARN

■ Leannais alleges that Cincinnati received notice of injury claims, and thereafter had a duty to warn present and prior purchasers of the dangerous condition of the machine.

The trial judge was apparently of the view that the Purchase Agreement's limitation on assumed liability, *supra* note 3, disposed of this claim.[9] The Agreement, how-

---

encourage business emigration, whether the relationship of workmen's compensation laws to product liability laws should be adjusted, and whether the many other economic and social effects of such an exception can be justified, are questions difficult to answer by analysis of the facts of a particular case and, it would appear, are more amenable to legislative investigation and determination.

**8.** In *Dippel v. Sciano,* 37 Wis.2d 443, 155 N.W.2d 55 (1967), the Supreme Court of Wisconsin applied the strict tort liability theory to manufacturers and sellers of defective products. That case did not involve the application of the same theory to a purchasing corporation. There is an essential difference between the fixing of responsibility upon manufacturers or sellers for their own acts and transferring that responsibility to a purchasing corporation innocent of and having no control over those acts. The latter may be good policy or bad, but it is not the policy set forth in *Dippel.*

**9.** At the September 17, 1976 hearing on the motion for summary judgment, counsel argued the question. The court stated its inclination ". . . to feel that this [failure to warn

ever, has no application to this particular allegation. The claim is based upon *Cincinnati's own* alleged omission under traditional principles of tort law. The essential question is whether Cincinnati had, and breached, a legal *duty* to warn Leannais' employer. Resolution of this issue thus turned on material questions of fact, and summary judgment was improper.

In *Chadwick v. Air Reduction Co.,* 239 F.Supp. 247 (E.D.Ohio, 1965), the claim alleged that Air Reduction had knowledge of other personal injury claims at the time of, and subsequent to, the acquisition of assets and that such knowledge imposed a duty to notify past purchasers of the product's danger. Analogizing to the tort principle of the "Good Samaritan," whereby the law has traditionally imposed no duty on an ordinary bystander to rescue others, the court held that Air Reduction had no duty to warn prior purchasers of the product's known defects. When the same issue arose in *Shane v. Hobam, Inc.,* 332 F.Supp. 526 (E.D.Pa.1971), that court had difficulty accepting the reasoning of *Chadwick. Shane* was similar to the present case, although the purchase agreement there expressly stated that Hobam assumed *no* product liability for sales made before the acquisition. The court granted partial summary judgment to Hobam, finding no liability resulting solely from the purchase of assets, but the court was unwilling to classify Hobam as an innocent bystander free of any duty to warn. The transfer of the corporate name, goodwill, and servicing responsibility for machines made before the transfer, created questions which the court was unwilling to foreclose by summary judgment:

> Plaintiff is treading on uncharted precedential seas and while there may be a serious question as to whether he has tipped the balance of precedent in his favor, I am reluctant to, and therefore will not, grant a summary judgment before pertinent factual gaps in the present case are filled in, thereby permitting the above questions to be answered with greater precisions. 332 F.Supp. at 530.

A duty to aid another has been found to arise from special relations between the parties, the most common being carrier-passenger and innkeeper-guest relationships. The law has been extended in recent years to include many others:

> During the last century, liability for "nonfeasance" has been extended still further to a limited group of relations, in which custom, public sentiment, and views of social policy have led the courts to find a duty of affirmative action. It is not likely that this process of extension has ended. For the most part such a duty has been imposed where the relation is of some actual or potential economic advantage to the defendant, and the expected benefit justifies the requirement of special obligations. Prosser, *Law of Torts,* § 56, p. 339 (4th Ed. 1971)

On the record before us, there is indication of actual or potential economic benefit to Cincinnati, attributable to customers of Forte. Cincinnati assumed all service obligations of Forte. Maintaining service ties to Forte customers enables Cincinnati to influence future sales. Knowledge of when and where various customers may need additional machinery, and knowledge of the condition of equipment which may need replacement, are important sales resources. Whether Cincinnati's succession to the service contracts provides sufficient nexus to establish a legal duty to warn Leannais' employer of the dangerous condition of the particular machine here involved, or of prior serious injuries incurred on other machines, is unclear from the bare pleadings and affidavits of record, and must await determination on remand. The existence of such a duty may be dependent upon such unanswered factual questions as whether the particular machine involved was under a service contract, whether Cincinnati had ever serviced that machine, or whether Cincinnati had information on present or prior ownership of Forte-built machines.

We intimate no view as to whether a duty to warn is present or was breached in

---

claim] is wiped out just as all the rest of it is . . ." but offered to read any law on the point received from plaintiff's counsel. The

record does not reflect whether a further submission was made.

the case before us. There being outstanding issues of material fact touching upon Cincinnati's own acts or omissions, however, summary judgment was inappropriate. Accordingly, the judgment of the district court is reversed and the case is remanded for further proceedings consistent herewith.

FAIRCHILD, Chief Judge, concurring in part, dissenting in part.

I join that part of the court's opinion which holds that question of fact exists as to whether the defendant had received notice of claims of injury and, therefore, had a duty to warn earlier purchasers of a dangerous condition in the product.

But I respectfully dissent from the holding that a successor company can be held liable for injuries caused by the defective product of its predecessor only when (1) there is an express or implied agreement of assumption, (2) the successor company consolidated or merged with the predecessor, (3) the successor is a "mere continuation" of the predecessor, or (4) the transfer of assets had the fraudulent purpose to allow the predecessor to escape liability for its obligations. The rule relied on pre-dates Wisconsin's adoption of the policy of strict liability in tort, see *Dippel v. Sciano,* 37 Wis.2d 443, 155 N.W.2d 55 (1967); *accord Arbet v. Gussarson,* 66 Wis.2d 551, 225 N.W.2d 431 (1975); *Schuh v. Fox River Tractor Co.,* 63 Wis.2d 728, 218 N.W.2d 279 (1974), and, there seems to be no decision of the Wisconsin courts applying this rule to strict liability for harm caused to the user of an unreasonably dangerous product. *See,* however, *Bazan v. Kux Machine Company,* 358 F.Supp. 1250 (E.D.Wis.1973).

Accordingly, our task is to conclude what rule the Wisconsin courts would select if confronted by the same question. When a federal court or the court of some other state is put to the task, it seems to me that unless existing decisions of the state whose law is to be determined indicate that a particular rule would be chosen, the court deciding the case should choose what it thinks is the soundest rule.

In this area, I find most persuasive the reasoning of the Supreme Court of California in *Ray v. Alad Corp.,* 19 Cal.3d 22, 136 Cal.Rptr. 574, 560 P.2d 3 (1977), that only by extending strict liability to successor companies that carry on the product line of their predecessors and that trade on the good name and good will of their predecessors can the policy underlying the strict products liability rule be given full effect. In *Ray v. Alad, supra,* the California Court justified imposing strict liability upon a successor company continuing the product line on three grounds:

(1) the virtual destruction of the plaintiff's remedies against the original manufacturer caused by the successor's acquisition of the business, (2) the successor's ability to assume the original manufacturer's risk-spreading role, and (3) the fairness of requiring the successor to assume a responsibility for defective products that was a burden necessarily attached to the original manufacturer's good will being enjoyed by the successor in the continued operation of the business.

I find this reasoning sound and assume that the courts of Wisconsin would concur.