**ARMOUR–DIAL, INC., Plaintiff,**

v.

**ALKAR ENGINEERING CORPORATION et al., Defendants,**

v.

**LOCKWOOD–GREENE ENGINEERS, INC., Third-Party Defendant.**

No. 75–C–365.

United States District Court,
E. D. Wisconsin.

April 25, 1979.

See also D.C., 469 F.Supp. 1193.

James T. Murray, Douglas Carroll, Arnold, Murray & O'Neill, Milwaukee, Wis., for Fidelity & Deposit.

Robert D. Hoyt, Robert I. Perina, Perina & Hoyt, Madison, Wis., for Zurich.

Proctor D. Robison, Frisch, Dudek & Slattery, Milwaukee, Wis., for Bonewitz Chemical; Jack C. Riley, Pryor, Riley, Jones & Walsh, Burlington, Iowa, of counsel.

Robert W. Smith, DEC International, Inc., Madison, Wis., for DEC International-Alkar.

James F. Lorimer, Boardman, Suhr, Curry & Field, Madison, Wis., for Lockwood.

Richard E. Braun, Whyte & Hirschboeck, Stanley F. Hack, Milwaukee, Wis., for Armour-Dial.

Timothy D. Fenner, Axley, Brynelson, Herrick & Gehl, Madison, Wis., for Rasmussens.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

The defendant Alkar, a division of DEC International, Inc. (Alkar-DEC), has moved for summary judgment dismissing the plaintiff's complaint, as currently amended, and the cross-claim of the defendant Bonewitz Chemical Services, Inc. (Bonewitz), pursuant to Rule 56, Federal Rules of Civil Procedure, insofar as those parties assert claims against Alkar-DEC.

Alkar-DEC is the successor of Alkar Engineering Corporation (Alkar), which allegedly improperly designed and constructed a continuous smokehouse for the plaintiff. Its status as successor is the sole basis for the plaintiff's claim against Alkar-DEC, according to the present record. The following facts appear to be undisputed for purposes of this motion.

## FACTS

On December 22, 1979, the plaintiff entered into a contract for the purchase of a continuous smokehouse to produce sausage. The plaintiff was aware of Alkar's tight financial position at the time and therefore required Alkar to obtain a performance

bond, which the bonding company insisted be guaranteed by Harvey J. Rasmussen and Harvey R. Rasmussen, principal officers and shareholders of Alkar, and their wives.

The smokehouse was put into operation in September, 1972. In late 1972, the plaintiff discovered that the smokehouse was not functioning properly and that it was corroding as the result of an irreversible chemical process.

Shortly before January 5, 1973, Harvey J. Rasmussen and Harvey R. Rasmussen inquired whether DEC International, Inc., (DEC), was interested in purchasing all or a part of Alkar's common stock. The Rasmussens advised DEC on January 9, 1973, that its financial position had worsened and that additional loans from Alkar's bank, M & I Marshall & Ilsley Bank, Milwaukee, Wisconsin (M & I Bank) would be necessary for Alkar to stay in business. On January 10, 1973, the M & I Bank took possession of all assets of Alkar which served as collateral for an overdue loan from the bank in an amount of approximately $853,000. At the time, the bank determined that Alkar had a negative net worth of $300,000 or more.

Thereafter, DEC informed the Rasmussens that it would probably have to consider an asset purchase rather than a stock purchase because of Alkar's financial position. Negotiations were entered into with the bank. Pursuant to a private foreclosure sale held on January 31, 1973, DEC purchased from the bank for cash certain of Alkar's assets: Alkar's equipment located in Lodi, Wisconsin; all but one of Alkar's motor vehicles; all of Alkar's inventory, materials and supplies located in Lodi, Wisconsin; and all of Alkar's general intangibles. DEC did not purchase Alkar's accounts receivable, its right to income tax refunds, its claim under its business interruptions coverage, refunds for prepaid expenses, its rights in outstanding contracts, or its interest in inventory and work in progress at customer sites. No assets were purchased from Alkar; all purchases were made from the bank.

DEC's total cash payment to the bank for the purchased assets was $547,899.32. The assets were purchased at a price below their fair market value, although the record is unclear exactly what their fair market value was at the time of purchase.

On January 31, 1973, DEC commenced leasing the plant office buildings previously occupied by Alkar from the Rasmussens, who personally owned the land and buildings.

DEC created Alkar-DEC as a division to operate the business formerly operated by Alkar, and it announced to the public by press release that it would operate Alkar's former business "with key management, sales and engineering personnel being retained" and "no changes in either product line or distribution system . . . planned."

Most of the salaried personnel and hourly employees were rehired. The two Rasmussens were employed in a consulting and advisory capacity, but no former officer, director or stockholder of Alkar has at any time been an officer, director or stockholder of DEC. DEC personnel assumed management of operations on January 31, 1973. New labor arrangements were made and DEC was not treated as a successor of Alkar for unemployment compensation purposes.

On February 9, 1973, Alkar petitioned for bankruptcy. It was adjudicated a bankrupt on November 5, 1973, and discharged from its debts. The trustee did not challenge the sale of assets to DEC.

## DISCUSSION

The parties agree that Wisconsin law governs whether Alkar-DEC is liable to the plaintiff by virtue of its status as successor to the operations of Alkar. Neither party has been able to discover a recent Wisconsin case addressing the liability of a purchaser corporation which purchases the assets of a seller corporation for the obligations of the seller corporation. There are, however, several cases in which federal courts in this circuit have stated what they believe the Wisconsin rule to be. *Leannais v. Cincinnati, Inc.,* 565 F.2d 437 (7th Cir. 1977); *Forest*

*Laboratories, Inc. v. Pillsbury Co.,* 452 F.2d 621 (7th Cir. 1971); *Bazan v. Kux Machine Co.,* 358 F.Supp. 1250 (E.D.Wis.1973). *Leannais,* supra, at 439, summarized the applicable law as follows:

"The general rule in the majority of American jurisdictions, including Wisconsin, is that a corporation which purchases the assets of another corporation does not succeed to the liabilities of the selling corporation. *Bazan v. Kux Machine Co.,* 358 F.Supp. 1250 (E.D.Wis.1973). Here, Cincinnati had no part in the design, manufacture, sale or distribution of the allegedly defective machine, and the general rule accords with the fundamental principle of justice and fairness, under which the law imposes responsibility for one's own act and not for the totally independent acts of others. There are, however, four well-recognized exceptions to the general rule under which liability may be imposed on a purchasing corporation: (1) when the purchasing corporation expressly or impliedly agreed to assume the selling corporation's liability; (2) when the transaction amounts to a consolidation or merger of the purchaser and seller corporations; (3) when the purchaser corporation is merely a continuation of the seller corporation; or (4) when the transaction is entered into fraudulently to escape liability for such obligations."

The plaintiff makes no claim that the first exception to the general rule, an express or implied agreement to assume the selling corporation's liability, is present in this case. No such claim is possible since there was no agreement of any kind between Alkar and DEC. The assets were purchased by DEC directly from the M & I Bank.

■ The second exception discussed above, a de facto merger or consolidation of the purchaser and seller corporations, cannot be established under the undisputed facts of this case. The cases following the general rule make clear that a de facto merger can only be found if the consideration given by the purchaser corporation to the seller corporation for its assets is shares

of the purchaser corporation's stock rather than cash. *Leannais,* supra, at 439; *McKee v. Harris-Seybold Co.,* 109 N.J.Super. 555, 264 A.2d 98 (1970). The rationale for this requirement is that liability should be imposed only where the seller's stockholders retain an interest in the manufacturing operations. See Note, 27 Hastings L.J. 1307, 1318 (1976).

The plaintiff urges that I follow *Turner v. Bituminous Casualty Co.,* 397 Mich. 406, 244 N.W.2d 873 (1976), in which the court removed the requirement that the consideration be stock in all cases. The court of appeals in *Leannais* noted but declined to follow the Michigan court's decision in *Turner.* 565 F.2d at 437 n.4. Furthermore, as was observed in *Bazan v. Kux Machine Co.,* 358 F.Supp. 1250, 1252 (E.D.Wis.1973), "[n]othing indicates that the position of the Wisconsin Supreme Court in related matters is such that they would decline to follow the prevailing approach on this issue." The debate, in any event, is academic in this case since no consideration—stock or cash— was received by the seller corporation. The assets were purchased for cash from the M & I Bank.

It is clear that a de facto consolidation did not occur because Alkar and DEC did not dissolve and form a new corporate entity. *Leannais,* supra, at 440.

■ The third exception to the general rule is where the purchaser corporation is merely a continuation or reincarnation of the seller corporation. The mere fact that the purchaser continues the operations of the seller does not of itself render the purchaser liable for the obligations of the seller; in order to impose liability on the purchaser, it must be shown that the purchaser represents "merely a 'new hat' for the seller." *McKee v. Harris-Seybold Co.,* supra, 264 A.2d at 106. "The key element of a 'continuation' is a common identity of the officers, directors and stockholders in the selling and purchasing corporations." *Leannais,* supra, at 440.

■ In this case, none of Alkar's officers, directors or stockholders retains such a posi-

tion with Alkar-DEC. It cannot be said that Alkar-DEC is merely a new hat for Alkar. The fact that the Rasmussens leased the plant buildings and equipment to Alkar-DEC and that some consulting services were performed by them is insufficient to establish a continuation; management of the operations changed hands. *Travis v. Harris Corp.*, 565 F.2d 443 (7th Cir. 1977); *National Dairy Products Corp. v. Borden Co.*, 363 F.Supp. 978, 980 (E.D.Wis.1973).

The final exception to the general rule that a purchaser corporation does not assume the obligations of the seller corporation is when the transaction is entered into fraudulently to escape liability for such obligations. To establish this last exception, the plaintiff relies on the undisputed facts (1) that before the M & I Bank took possession of Alkar's assets pursuant to secured-loan agreements, Alkar and DEC discussed the possibility of a sale of Alkar stock to DEC, but that after the M & I Bank took possession of Alkar's assets, DEC decided instead to negotiate with the bank for the acquisition of Alkar's assets directly from the bank under a private foreclosure sale; and (2) that the assets were purchased at a price below their fair market value.

In my judgment, the facts upon which the plaintiff relies do not raise a genuine issue for trial.

This is not a case where a transfer of assets to another corporation rendered the seller corporation insolvent and unable to meet its obligations to creditors. *See Wolff v. Shreveport Gas, Electric Light and Power Co.*, 138 La. 743, 70 So. 789 (1916). Rather, the facts indicate that Alkar was insolvent before any assets were transferred and that such insolvency authorized the M & I Bank to take possession of those assets as collateral for its loan to Alkar. The facts also indicate that Alkar had no control over the decision to sell the assets to DEC or the price for which the assets were sold. Further, the sale was not found fraudulent during the Alkar bankruptcy proceedings. Notwithstanding the favorable price at which DEC obtained Alkar's assets, the facts indicate that the sale of assets to DEC was neither a contract producing insolvency, see § 242.04, Wis.Stats., nor intentionally fraudulent, see § 242.07, Wis.Stats.

Since the plaintiff has not raised a genuine issue for trial as to the applicability of any exception to the general rule of non-liability of a corporation which purchases the assets of another corporation, Alkar-DEC's motion for summary judgment will be granted.

I also find that summary judgment should be granted dismissing the cross-claim of Bonewitz. Such cross-claim alleges that Alkar-DEC is a necessary party because of certain repairs and services performed in connection with the smokehouse. However, there is no allegation that the repairs or services were improper and there is no claim for relief in this regard. Bonewitz has not responded to Alkar-DEC's brief in support of its motion to suggest why there is any issue for trial. Summary judgment will therefore also be granted as to Bonewitz' cross-claim.

Therefore, IT IS ORDERED that the motion of Alkar, a division of DEC International, Inc. for summary judgment dismissing the complaint of the plaintiff and the cross-claim of the defendant Bonewitz Chemical Services, Inc. be and hereby is granted insofar as they assert claims against Alkar, a division of DEC International, Inc.