Barry L. TAYLOR, Plaintiff,

v.

ATLAS SAFETY EQUIPMENT COMPANY, INC., Defendant.

GEMTOR, INC., Defendant and Third–Party Plaintiff,

v.

UNITED STATES FORGECRAFT CORPORATION, Third–Party Defendant.

Civ. A. No. 3:92CV270.

United States District Court, E.D. Virginia, Richmond Division.

Oct. 15, 1992.

Woodson Terry Drumheller, Woodson T. Drumheller and Associates, Richmond, VA, for Barry L. Taylor, plaintiff.

James Willard Walker, Philip Browder Morris, Michelle Preston Wiltshire, Morris and Morris, Richmond, VA, for Atlas Safety Equip. Co., Inc., defendant and Gemtor, Inc., defendant.

Henry S. Carter, Richard White Schaffer, Schaffer & Cabell, P.C., Richmond, VA, for U.S. Forgecraft Corp., third-party defendant.

## MEMORANDUM OPINION AND ORDER

PAYNE, District Judge.

Barry L. Taylor, a Virginia resident, brought this product liability action against Atlas Safety Equipment Company, Inc. ("Atlas"), a New York corporation, and its alleged successor corporation, Gemtor, Inc. ("Gemtor"), a New Jersey corporation, by filing a motion for judgment in the Circuit Court for the City of Richmond. Taylor seeks damages for injuries he suffered when he fell from a wall while working at a construction site in Chester, Virginia. At the time of his fall, Taylor was using a fall restraint device allegedly assembled and sold by Atlas. The complaint asserts that Atlas and Gemtor are liable directly on theories of negligent design and manufacture, negligent failure to warn, and breach of certain implied and express warranties. The complaint also charges that Gemtor is liable as the corporate successor of Atlas.

After removing the case to this court pursuant to 28 U.S.C. §§ 1441 and 1446 (1988), Gemtor filed a third-party action against United States Forgecraft Corporation ("Forgecraft"), which manufactured certain components of Taylor's fall protec-tion device. Following a period of discovery, Gemtor filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56, contending that there is no basis to hold it liable either directly or as Atlas' successor. The motion has been fully briefed and argued by the parties and Taylor has not sought further discovery on the issues presented by the motion. *See* Fed.R.Civ.P. 56(f). For the reasons set forth below, Gemtor's motion is granted.

## STATEMENT OF FACTS

The following facts are essentially undisputed. On November 12, 1986, Taylor was injured seriously when he fell approximately ten feet while working on a wall at a construction site in Chester, Virginia. At the time of his fall, Taylor was wearing a fall protection device consisting of a safety belt to which two snap hook assemblies were attached. Each snap hook assembly consisted of a larger snap hook joined to a smaller snap hook by a single closed link. One of these assemblies anchored Taylor to the wall. According to Taylor, the latch on one of the two smaller snap hooks opened and caused him to fall.

The snap hooks bear markings indicating that they were manufactured by Forge-craft. Inscriptions on the smaller sna-phooks, Forgecraft model 3031, further in-dicate that Forgecraft manufactured the hooks for Atlas in 1984. The larger sna-phooks, Forgecraft model 3029, do not bear markings indicating that these hooks were manufactured for or sold by Atlas. Taylor apparently acquired the snap hook assem-blies sometime between January 1986 and October 1986, while he was working for Dee Shoring Company, a Richmond-based construction company.

Until the end of August 1985, Atlas was in the business of manufacturing and sell-ing fall protection equipment. However, as a result of Atlas' inability to obtain affordable product liability insurance, the company, through its board of directors, resolved to liquidate. Throughout the summer of 1985, the company scaled back oper-ations and sought bids from potential liqui-

dators. In July 1985, Atlas' president, Alan Neustater, formed One Johnson Avenue Corporation ("JAC"), a New Jersey corporation, to bid for the right to liquidate Atlas. Neustater is JAC's sole shareholder, but he never owned stock in Atlas.

JAC was successful in its efforts and, on August 23, 1985, JAC entered into an Acquisition Agreement with Atlas whereby JAC acquired, for $25,000 cash, certain of Atlas' assets, including accounts receivable, and agreed to assume Atlas' trade debt. In the Agreement, JAC specifically refused to assume liability for pending or future product liability claims against Atlas. Following the sale of its assets to JAC, Atlas fired its approximately 34 employees, cancelled its contract with the employee's union, discarded all inventory and raw materials, cancelled pending orders, and terminated its lease. Although Atlas officially ceased doing business on August 31, 1985, it continued its corporate existence until it was formally dissolved on January 17, 1989.

In July 1985, Neustater also formed defendant Gemtor and became its president, and sole director and shareholder.[1] On September 3, 1985, Gemtor began operations manufacturing and selling fall protection equipment. In so doing, Gemtor hired many of Atlas' former employees, negotiated new employment contracts with them and with their union, negotiated a new lease on the premises formerly occupied by Atlas, and assumed Atlas' phone number. Gemtor acquired the machinery and equipment on the premises, which apparently were abandoned by JAC. Although Gemtor sells products that Atlas did not, it continues to sell the model 3031 snap hook at issue in this litigation. Gemtor also sells to some former customers of Atlas. However, Gemtor did not and does not sell any product stamped with the Atlas name, and never filled any orders with Atlas' materials or inventory. In particular, Gemtor's records indicate that it did not sell the model 3031 hooks Taylor was using at the time of his accident.

## DISCUSSION

As an initial matter, the court observes that during oral argument, counsel for Taylor voluntarily withdrew all claims of direct liability against Gemtor, including any claim that Gemtor had, and negligently breached, an independent duty to warn Taylor of alleged product defects. *See, e.g., Polius v. Clark Equip. Co.,* 802 F.2d 75, 84 (3d Cir.1986); *Leannais v. Cincinnati, Inc.,* 565 F.2d 437, 442 (7th Cir.1977). Accordingly, the sole issue presented on this summary judgment motion is whether liability can be imposed on Gemtor as the corporate successor of Atlas. The parties agree that Virginia law controls the successor liability issue as well as the other issues in this diversity action. For purposes of this motion only, the references to Gemtor in this opinion include JAC.

### A. *Summary Judgment Standard*

Summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). In considering a motion for summary judgment, the court is not to weigh the evidence, but rather must "determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In so doing, the court must view the underlying facts in the light most favorable to the non-moving party. *Matsuhita Elec. Indus. Corp. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,'" that there is no genuine issue of material fact and that it is entitled to judgment as a matter

---

1. Both JAC and Gemtor are owned by FAN Holding Corporation, a holding company formed by Neustater and his wife.

of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Catawba Indian Tribe v. South Carolina,* 978 F.2d 1334, 1338 (4th Cir.1992). Once this initial showing under Rule 56(c) is made, the burden of production, not persuasion, shifts to the non-moving party. The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *see also* Fed.R.Civ.P. 56(e); *Catawba Indian Tribe,* 978 F.2d at 1338.

In meeting this burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356. That party must demonstrate that there is a *"genuine issue for trial."* Fed.R.Civ.P. 56(e) (emphasis added); *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. There is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356; *see also Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510.

Considering the applicable standard, the court turns to the merits of the motion.

### B. *Successor Liability*

■ As a general rule, a corporation that purchases the assets of another corporation is not liable for the debts and contingent liabilities of the selling corporation. *See, e.g., Bud Antle, Inc. v. Eastern Foods, Inc.,* 758 F.2d 1451, 1456 (11th Cir. 1985); *Leannais,* 565 F.2d at 439; *Travis v. Harris Corp.,* 565 F.2d 443, 446 (7th Cir.1977); *Crawford Harbor Assocs. v. Blake Constr. Co.,* 661 F.Supp. 880, 883 (E.D.Va.1987) (applying Virginia law); *see also* 15 William M. Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 7122 (Perm.Ed.1990). This general rule encompasses product liability claims, as well as other debts and liabilities of the selling corporation. *See, e.g., Crawford*

*Harbor,* 661 F.Supp. at 883; 15 William M. Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* §§ 7123, 7123.05.

As explained most recently in *Harris v. T.I., Inc.,* 243 Va. 63, 413 S.E.2d 605 (1992), Virginia recognizes four traditional exceptions to the general rule that a successor corporation does not assume the liabilities of the predecessor entity:

> In order to hold a purchasing corporation liable for the obligations [including contingent product liability claims] of the selling corporation, it must appear that (1) the purchasing corporation expressly or impliedly agreed to assume such liabilities; (2) the circumstances surrounding the transaction warrant a finding that there was a consolidation or *de facto* merger of the two corporations; (3) the purchasing corporation is merely a continuation of the selling corporation; or (4) the transaction is fraudulent in fact.

*Harris,* 243 Va. at 70, 413 S.E.2d at 609; *see also Pepper v. Dixie Splint Coal Co.,* 165 Va. 179, 191, 181 S.E. 406, 410 (1935). Taylor does not contend that Gemtor expressly or impliedly agreed to assume Atlas' liabilities or that the cash purchase of Atlas' assets was fraudulent. Rather, Taylor maintains that exceptions (2) and (3) apply to impose successor liability on Gemtor, *i.e.,* that a *"de facto* merger" occurred between Atlas and Gemtor or that Gemtor is a "mere continuation" of Atlas.

### 1. *De Facto Merger*

■ Although the Supreme Court of Virginia has not squarely addressed the concept of *de facto* merger in the area of successor liability, Virginia likely would adopt the traditional view of the *de facto* merger exception. *See Harris,* 243 Va. at 69–72, 413 S.E.2d at 609–10 (adhering to traditional "mere continuation" doctrine and expressly rejecting expansive reading of this exception in the product liability context). The elements of a *de facto* merger under the traditional view are: (1) a continuity of the selling corporation's enterprise, including continuity of management, personnel, physical location, assets, and general business operations; (2) a continuity of ownership because the purchas-

ing corporation acquires the assets with shares of its own stock, which ultimately are held by the selling corporation's shareholders; (3) prompt liquidation and dissolution of the selling corporation's business operations; and (4) an assumption by the purchasing corporation of the selling corporation's obligations necessary for normal operation of the seller's business. *See, e.g., Bud Antle,* 758 F.2d at 1457–58; *Crawford Harbor,* 661 F.Supp. at 884. The key element of a *de facto* merger is, however, a continuity of ownership between the selling and purchasing corporations. *See, e.g., Leannais,* 565 F.2d at 439–40; *Travis,* 565 F.2d at 447 ("Absent a transfer of stock, the nature and consequences of a transaction are not those of a merger."); *Crawford Harbor,* 661 F.Supp. at 884 (" 'The essential characteristic of a de facto merger is the succession of the selling corporation's stockholders to stockholder status in the purchasing corporation.' ") (citation omitted).

■ In this action, it is undisputed that Gemtor purchased Atlas' assets with cash. Moreover, as set forth in the affidavit and deposition testimony of Allen Neustater, no shareholders of Atlas became shareholders of Gemtor and no shareholders of Gemtor obtained an ownership interest in Atlas as a result of the transaction. Taylor has not challenged these facts. Accordingly, the court holds that the circumstances surrounding the transaction do not warrant a finding of *de facto* merger.

### 2. *Mere Continuation*

Taylor next contends that Gemtor is a "mere continuation" of Atlas. In support of this contention, Taylor asserts, without contradiction, that Gemtor has the same president, address, and phone number as Atlas; that Gemtor has many of the same employees and customers as Atlas; and that Gemtor continues to sell the model 3031 snap hook that is at issue in this case.

Taylor further asserts that Neustater was one of three directors of Atlas and that he also is a director of Gemtor. In support of this assertion, Taylor relies on minutes of a 1985 meeting of Atlas' board of directors and on a state corporation filing made by Atlas in 1984,[2] both of which indicate that Neustater was a director of Atlas. In its motion for summary judgment and at oral argument, Gemtor contends that Neustater was not a director of Atlas. The court finds that there exists a dispute as to this factual issue. Gemtor further argues, however, that even if Neustater were a director of Atlas, Gemtor is not a continuation of Atlas.

■ Virginia adheres to the traditional view of what constitutes a "mere continuation" for purposes of imposing successor liability. *Harris v. T.I., Inc.,* 243 Va. at 69–72, 413 S.E.2d at 609–610. In determining whether one corporation is the "mere continuation" of another under traditional doctrine, the essential inquiry is whether there has been a continuation of the *corporate entity* of the seller, not whether there has been a continuation of the seller's business operations. *See, e.g., Bud Antle,* 758 F.2d at 1458; *Travis,* 565 F.2d at 447; *Crawford Harbor,* 661 F.Supp. at 885; *Niccum v. Hydra Tool Corp.,* 438 N.W.2d 96, 98 (Minn.1989). As the Supreme Court of Virginia has recently observed, the "key element" of this inquiry is whether there is "[a] common identity of the officers, directors, and stockholders in the selling and purchasing corporations." *Harris v. T.I., Inc.,* 243 Va. at 70, 413 S.E.2d at 609; *see also Pepper,* 165 Va. at 190, 181 S.E. at 410 (finding continuation based principally on identity of ownership and management); *Bud Antle,* 758 F.2d at 1459; *Leannais,* 565 F.2d at 440. Among these three required factors (officers, directors, and stockholders), it appears that identity of ownership is the most important component to sustain a finding of "mere continuation." *See, e.g., Weaver v. Nash Int'l Inc.,* 730

---

**2.** At oral argument, Taylor's counsel advised the court that he was in the process of obtaining a copy of Atlas' 1984 state corporation filing in New Jersey that listed Neustater as a director of Atlas for that year. After oral argument, counsel filed that document together with an affidavit and a motion to file the affidavit out of time. The court grants the motion and has considered the document and counsel's affidavit in ruling on Gemtor's summary judgment motion.

F.2d 547, 548 (8th Cir.1984); *Emerson Elec. Corp. v. Rego Corp.*, 1991 WL 36954 at *6, 1991 U.S. Dist. Lexis 3140 at *16–*17 (N.D.Ill. March 13, 1991).

■ Another element of the traditional "mere continuation" analysis is whether, following the transaction, there exists one corporation. *See, e.g., Travis*, 565 F.2d at 440; *Diaz v. South Bend Lathe Inc.*, 707 F.Supp. 97, 100 (E.D.N.Y.1989); *Lopata v. Bemis Co.*, 406 F.Supp. 521, 526 (E.D.Pa. 1975), *aff'd*, 546 F.2d 417 (3d Cir.1976); *see generally* Timothy J. Murphy, *A Policy Analysis of A Successor Corporation's Liability For Its Predecessor's Defective Products When The Successor Has Acquired The Predecessor's Assets For Cash*, 71 Marq.L.Rev. 815 (1988).

■ Considering the legal principles applicable under Virginia law and examining the relevant factors, Taylor's claim that Gemtor is the mere continuation of Atlas is unpersuasive. First, it is undisputed that there is no identity of ownership between Atlas and Gemtor. Second, except for Neustater, there is no identity of management between Atlas and Gemtor. Third, there remained two corporations following the Atlas–Gemtor transaction; Atlas continued its corporate existence for approximately three and one half years prior to dissolving.

Taylor correctly argues that there is a disputed issue of material fact regarding whether Neustater was a director of Atlas. However, this dispute is not "genuine" so as to preclude the entry of summary judgment. Given the undisputed total absence of shareholder identity between Atlas and Gemtor, the undisputed fact that Neustater was the only common officer, and, at most, the only common director between the two companies, and the prolonged continuation of Atlas' corporate existence, no rational trier of fact could find that Gemtor was a mere continuation of Atlas under Virginia law. *See, e.g., Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.[3]

Without citing authority, Taylor argues that successor liability must be imposed on Gemtor because the transaction between Atlas and Gemtor was not "arm's length." This argument is similarly unavailing.

In discussing the "mere continuation" exception in *Harris*, the Supreme Court of Virginia observed that "[w]hen ... the purchase of all the assets of a corporation is a bona-fide, arm's length transaction, the 'mere continuation' exception does not apply." 243 Va. at 70, 413 S.E.2d at 609 (citing *Leannais*, 565 F.2d at 440). On its face, this statement arguably creates a defense to "mere continuation" liability if a defendant establishes that the sale or transfer of assets was arm's length. It is not at all clear, however, that *Harris* means that the converse of this statement (which is the premise of Taylor's argument) is true, *i.e.*, that the absence of an arm's length bargain mandates a finding that one company is the "mere continuation" of another.

■ In any event, assuming, without deciding, that the absence of an arm's length bargain is sufficient to impose successor liability under Virginia law, Taylor has failed to demonstrate that the transaction in this case was not arm's length. As set forth in Neustater's affidavit and deposition testimony, Gemtor paid Atlas valuable and adequate consideration, $25,000 cash, in exchange for Atlas' physical assets and receivables. Moreover, the minutes of Atlas' board of directors meeting, attached as an exhibit to Neustater's affidavit, indicate, without contradiction by Taylor, that Neustater did not participate in the consideration of Gemtor's offer by Atlas' board of directors. Under these circumstances, Taylor's unsupported assertion that the asset purchase was not arm's length does not preclude entry of summary judgment.

### CONCLUSION

For the foregoing reasons, Gemtor's motion for summary judgment is granted. As a result, the third-party complaint filed by

---

**3.** The similarities that Taylor cites between Atlas and Gemtor, such as their common address, phone number, and product, are not legally germane to whether Atlas' corporate entity, as opposed to its business operation, continued in Gemtor. *See, e.g., Travis*, 565 F.2d at 447.

Gemtor against Forgecraft also should be dismissed. Within ten (10) days from the date of this Memorandum Opinion and Order, Taylor is directed to show cause why this action also should not be dismissed against Atlas which, according to the record, is a non-existent corporation. The Clerk is directed to send a copy of this Memorandum Opinion and Order to all counsel of record.

It is so ORDERED.