OPINION
Plaintiffs, Pamela Howell et al., appeal from the summary judgment granted by the trial court in favor of Defendant Atlantic-MEECO, Inc.
On June 16, 1997, a catwalk collapsed at Buck Creek State Park, which caused the plaintiffs to be plunged into the water and allegedly sustain injuries. The catwalk was manufactured by MEECO Marinas, Inc., and installed prior to the park's opening in 1981.
On April 11, 1991, six years before the accident, MEECO International, Inc. had purchased the assets and liabilities of MEECO Marinas, Inc. Then, on January 15, 1993, Atlantic-MEECO, Inc. ("AMI") bought the assets and certain specific liabilities of MEECO International, Inc.
On June 14, 2000, Plaintiffs filed a complaint in the court of common pleas against AMI alleging tortious conduct related to the collapse of the catwalk. On July 5, 2001, AMI filed a motion for summary judgment, arguing that it was not the successor in liability of the manufacturer of the Buck Creek catwalk. The trial court granted AMI's motion., Plaintiffs filed timely notice of appeal. They present one assignment of error.
 ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT SINCE THERE EXIST MATERIAL FACTUAL DISPUTES REGARDING DEFENDANT'S LIABILITY AS A SUCCESSOR CORPORATION AND DEFENDANT'S OWN LIABILITY AND DUTY TO WARN.
Summary judgment may not be granted unless the entire record demonstrates that there is no genuine issue of material fact and that the moving party is, on that record, entitled to judgment as a matter of law. Civ.R. 56. The burden of showing that no genuine issue of material fact exists is on the moving party. Harless v. Willis Day WarehousingCo. (1978), 54 Ohio St.2d 64.
The moving party cannot discharge this burden by making a conclusory statement that the non-moving party has no evidence to prove its case, but must point to some evidence which, if true, requires a judgment for the moving party on one or more issues of fact determinative of the non-moving party's claim for relief or affirmative defense. Dresher v.Burt (1996), 75 Ohio St.3d 280. The non-moving party must then preservethe factual dispute concerning that issue by setting forth specific factswhich, if true, keep it in dispute. Id.
When a motion for summary judgment is made, the non-moving party is required to rebut any evidence presented by the movant in support of its motion by production of evidence on that same issue, if he will bear the burden of production at trial. Celotex Corp. v. Catrett (1986),477 U.S. 317, 322-323; Wing v. Anchor Media, Ltd. of Texas (1991),59 Ohio St.3d 108, paragraph three of the Syllabus.
 All evidence submitted in connection with a motion for summary judgmentmust be construed most strongly in favor of the party against whom themotion is made. Morris v. First National Bank Trust Co. (1970),21 Ohio St.2d 25.
"Because a trial court's determination of summary judgment concerns a question of law, we apply the same standard as the trial court in our review of its disposition of the motion; in other words, our review is denovo." Am. States Ins. Co. v. Guillermin (1996), 108 Ohio App.3d 547,552., Plaintiffs argue that AMI is liable for the injuries they sufferedwhen the catwalk collapsed because AMI is a successor of the manufacturerof the catwalk. However, a corporation that purchases the assets ofanother corporation is not liable for injuries resulting from themanufacture of a defective product by a predecessor corporation unless:"(1) the buyer expressly or impliedly agrees to assume such liability;(2) the transaction amounts to a de facto consolidation or merger; (3)the buyer corporation is merely a continuation of the sellercorporation; or (4) the transaction is entered into fraudulently for thepurpose of escaping liability." Flaugher v. Cone Automatic Mach. Co.(1987), 30 Ohio St.3d 60, 62. See also Welco Indust., Inc. v. AppliedCompanies (1993), 67 Ohio St.3d 344.
 AMI argues that Oklahoma law governs the controversy because the mergertransactions took place there. We find it unnecessary to answer thechoice of law question, because the successor liability test in Oklahomais substantially the same as Ohio's Flaugher/Welco test. See Goucher v.Parmac, Inc. (Okla.App. 1984), 694 P.2d 953, 954 (citing Pulis v. UnitedStates Electrical Tool Company (Okla. 1977), 561 P.2d 68, 69).Therefore, we will proceed to analyze the controversy on the rule commonto both jurisdictions.
 The plaintiffs do not point to a specific exception to the general ruleagainst successor liability, but instead present evidence from which,they argue, one must glean that one of the Flaugher/Welco exceptions wasmet for purposes of surviving summary judgment. However, we find, forthe reasons stated below, that the plaintiffs failed to meet theirburden, pursuant to Civ.R. 56(E), to come forward with specific factsshowing that there remains a genuine issue for trial.
 AMI supported its motion for summary judgment with the affidavit of H.Gene Walker, the CEO of the company, which states:
 1. I, as CEO of Atlantic-MEECO, Inc., have personal knowledge of the facts hereinafter stated or the facts that are a matter of public record as indicated by the documents attached hereto.
 2. MEECO Marinas, Inc. is the company which built the catwalk in question in 1980-81.
 3. Atlantic-MEECO, Inc. was incorporated on January 14, 1993, years after the catwalk in question was constructed by MEECO-Marinas, Inc.
 4. On January 15, 1993, Atlantic-MEECO, Inc. bought the assets of but only specifically identified liabilities of MEECO International.
 5. At some point in 1991, MEECO International bought the assets and liabilities of MEECO Marinas, Inc.
 6. The sale of MEECO International to Atlantic-MEECO, Inc. was in no manner fraudulent.
 7. The sale by MEECO International to Atlantic-MEECO, Inc. was not a merger or consolidation of the two corporate entities.
 8. The board of directors and shareholders of the MEECO Marinas, Inc. are not the board of directors and shareholders of Atlantic-MEECO, Inc.
 9. Atlantic-MEECO, Inc. is not a continuation of the corporation MEECO Marinas, Inc.
 10. Atlantic-MEECO, Inc. did not expressly or impliedly assume the liability of MEECO Marinas, Inc. for any possible defect in the catwalk at Buck Creek State Park in Clark County, Ohio.
 AMI also supported their motion with the AMI certificate ofincorporation and the MEECO International-AMI Asset Purchase Agreement.
 In response to AMI's motion, plaintiffs argued that the Walkeraffidavit was insufficient because Walker was not the CEO of AMI at thetime of the transaction. Also, the plaintiffs argued that the AssetPurchase Agreement showed that AMI had acquired MEECO International as "agoing concern" at the same address, phone and fax numbers, rather than amere collection of assets. The plaintiffs further argued that AMI "holdsitself out" as a successor to the expertise and reputation of itspredecessor companies, pointing to the AMI website as evidence. Finally,the plaintiffs offered evidence gathered during the discovery stage ofthe plaintiff's separate cause of action against the State of Ohio,including the deposition testimony of Officer Michael Yates. Theplaintiffs argued that the discovery materials from the plaintiff's caseagainst the state demonstrates that the park operators believed thatMEECO Marinas, Inc., the manufacturers of the catwalk, and AMI, were thesame company.
 Regarding the first Flaugher/Welco exception, whether the buyercorporation expressly or impliedly agreed to assume liability, theAMI-MEECO International purchase agreement specifically lists theliabilities that AMI assumed through the deal. The agreement saysnothing of AMI's liability for defects in MEECO Marina's products.
 Regarding the second exception, whether the transaction amounted to ade facto consolidation or merger, the Welco court listed the hallmarksof a de facto merger: "(1) the continuation of the previous businessactivity and corporate personnel, (2) a continuity of shareholdersresulting from a sale of assets in exchange for stock, (3) the immediateor rapid dissolution of the predecessor corporation, and (4) theassumption by the purchasing corporation of all liabilities andobligations ordinarily necessary to continue the predecessor's businessoperations." Welco, supra, at 349 (quoting Turner v. Bituminous Cas. Co.(Mich. 1976), 244 N.W.2d 873, 879). Although AMI arguably meets thefirst of those hallmarks of a de facto merger, because it is engaged inthe same business, as its predecessors, the manufacture and sale ofmarine dock systems, that alone cannot subject AMI to liability as asuccessor to the manufacturer of the Buck Creek catwalk. The others mustbe shown, as well, and they are not.
 Likewise, the plaintiffs have not presented any evidence that AMI isliable under the fourth Flaugher/Welco exception, that the transactionwas entered into fraudulently for the purpose of escaping liability.Indicia of fraud include lack of consideration and good faith. Welco,supra, at 349. We find nothing in the record that demonstrates that theAMI-MEECO International deal was entered into fraudulently.
 The plaintiffs' evidence appears most strongly focused on the thirdexception to the Flaugher/Welco rule, whether the buyer corporation is a"mere-continuation" of the seller. Declining to adopt an expandedversion of the mere-continuation theory, the Welco court noted that "thebasis of this theory is the continuation of the corporate entity, not thebusiness operation, after the transaction." Welco, supra, at 350(citing Flaugher, supra).
A corporation might be held liable under the mere-continuation theory where "one corporation sells its assets to another corporation with the same people owning both corporations." Id. (quoting Turner, supra, at892). "Thus, the acquiring corporation is just a new hat for, orreincarnation of, the acquired corporation." Id. Because amere-continuation transaction is executed to escape liability, a hallmarkof such transactions is inadequacy of consideration. Id.
The Welco court found that although the buyer corporation in issue hadthe same physical plant, officers, employees, and product line as theseller corporation, the buyer corporation was not a mere-continuation ofthe seller and no successor liability followed because the owners of thebuyer and seller corporations were not the same people, and werestrangers. Id. The similarities between the buyer and sellercorporations were merely an indication of liability under the expandedview of successor liability, not the traditional rule that the Welcocourt preserved. Id.
Applying the law to the facts at bar, we follow the reasoning of theWelco court and decline to adopt an expanded view of "mere-continuation"successor liability under the product line or continuity of enterprisetheories. See id., at 347-48; 350. Further, under the traditionalmere-continuation analysis, we find that the plaintiffs failed to presentevidence that meets the strict requirements of Welco. There is noevidence that the buyers and sellers in the AMI-MEECO International dealare the same parties and/or not strangers, and there is no evidence thatthe buyers and sellers in the prior deal, MEECO International-MEECOMarinas, are related in any way. As noted above, there is also noevidence presented regarding a lack of consideration, or an effort tofraudulently escape liability. In other words, there is nothing thatwould raise an issue of fact regarding whether AMI is a mere continuationof MEECO Marinas, the manufacturers of the catwalk.
 Therefore, we find that the plaintiffs did not carry their burden underCiv.R. 56(E) to set forth specific facts showing that there is a genuineissue for trial. See Dresher, supra. The Walker affidavit affirmativelydemonstrated that the AMI-MEECO International transaction did not exposeAMI to liability under any of the Flaugher/Welco exceptions. Even whenviewing the evidence in a light most favorable to the plaintiffs, we findthat the plaintiffs have failed to come forward with specific facts whichkeep the successor liability issue in dispute. The plaintiffs havefailed to present evidence that the mere-continuation exception, or anyother exception to the Flaugher/Welco rule, applies in this case. Therefore, the trial court did not err when it granted AMI's motion for summary judgment.
Finally, plaintiffs argue that the relationship between AMI and the manufacturers of the catwalk imposed a duty on AMI to warn the customers of the prior corporation of any product defects. The following factors must be considered to determine whether a successor corporation has the legal duty to warn a predecessor's customers: "(1) succession to a predecessor's service contracts; (2) whether the particular machine involved was under a service contract; (3) whether the successor had ever serviced the subject machine; (4) the successor corporation's knowledge of the present or prior ownership of such machines." Gentile v. City ofCleveland (May 2, 1985), Cuyahoga App. No. 48962, unreported, at *9.See Leannis v. Cincinnati, Inc. (C.A.6, 1977), 565 F.2d 437.
The Gentile court held that the continuation of name and acquisition ofgoodwill cannot create a duty to warn when there is no accompanyingassumption of service responsibility. Gentile, supra, at *10. The plaintiffs failed to present any evidence of the existence of a service agreement between AMI or its predecessors and their customers. Therefore, we cannot find that AMI had a legal duty to warn their predecessor's customers of product defects.
Accordingly, the plaintiff-appellants' assignment of error is overruled.
 Conclusion
Having overruled the sole assignment of error presented, we will affirm the judgment from which the appeal was taken.
WOLFF, P.J. and FAIN, J., concur.